TENNESSEE CHEMICAL CO. *v.* ROBERT SMITH *et ux.**

(*Nashville.* December Term, 1921.)

1. **MASTER AND SERVANT.** Finding of accidental death within Compensation Act sustained.

In a proceeding under the Workmen's Compensation Act to obtain compensation for death of a servant, evidence *held* to sustain a finding that death was caused by accident arising out of and in the course of employment; body of deceased being found in reservoir near plant. (*Post, pp.* 536, 537.)

2. **MASTER AND SERVANT.** Accidental death within Compensation Act provable by circumstantial evidence.

That death of servant was caused by accident may be shown by circumstantial evidence in a proceeding under the Workmen's Compensation Act. (*Post, pp.* 536, 537.)

Cases cited and approved: Flucker v. Carnegie Steel Co., 263 Pa., 113; Donlon v. Kips Bay Brew. & Malt. Co., 189 App. Div., 415; Hollenbach Co. v. Hollenbach, 181 Ky., 262; Manziano v. Public Service Gas Co., 92 N. J. Law, 322; Steel Sales Corp. v. Ind. Comm. of Ill., 293 Ill., 435.

3. **MASTER AND SERVANT.** Injury while washing after work held one ''arising out of and in course of employment'' within Compensation Act.

A servant, who fell into a reservoir and was drowned while washing up preparatory to going home according to custom, died as the

---

*On injuries arising out of and in the course of the employment in general see note in L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114: L. R. A. 1918F, 896.

As to who are entitled to compensation as dependents within meaning of Workmen's Compensation Acts, see notes in L. R. A. 1916A, 121, 163, 248; L. R. A. 1915D, 157, and 1918F, 483.

On dependency within Workmen's Compensation Act., see note in 13 A. L. R., 686.

Tenn. Chem. Co. v. Smith.

result of an accident "arising out of and in the course of employment" under the Workman's Compensation Act. (*Post, pp.* 537-540.)

Cases cited and distinguished: Johnson Coffee Co. v. McDonald, 143 Tenn., 505; Terlecki v. Strauss, 85 N. J. Law, 454; Whiting-Mead Comm. Co. v. Ind. Acc. Comm. of Calif., 178 Cal., 505; In re Ayers, 66 Ind. App., 458; Milne v. Sanders, 143 Tenn., 602.

4. **MASTER AND SERVANT.** Dependency within Compensation Act *question of fact.*

Question of the dependency of a father and mother is one of fact under Workmen's Compensation Act, section 30, subsecs. 3, 3a, and a finding of dependency will not be disturbed if there is any evidence to support it. (*Post, pp.* 540-542.)

Acts cited and construed: Acts 1919, ch. 123, sec. 30, subsecs. 3 & 3a.

5. **MASTER AND SERVANT.** Finding of partial dependency within Compensation Act sustained.

In proceedings by parents under the Workmen's Compensation Act to obtain compensation for the death of nineteen year old son, a finding that the parents were partial dependents *held* sustained by the evidence. (*Post, p.* 542.)

6. **MASTER AND SERVANT.** Compensation to parents for minor son's death not limited to minority.

Parents, who were partial dependents of a minor son, were entitled to compensation for a period extending beyond minority under the Workman's Compensation Act. (*Post, pp.* 542, 543.)

Cases cited and approved: Parson v. Murphy et al., 101 Neb., 542; Belcher v. Campo, 1 Conn. Com. Dec. Dig., 612; In re McMahon, 229 Mass., 48.

---

FROM DAVIDSON.

---

Error to the Circuit Court of Davidson County. —Hon. Chester K. Hart, Special Judge.

LEVINE & LEVINE, for plaintiff in error.

THOS. G. WATKINS and THOS. H. MALONE, for defendants in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This proceeding was instituted by Robert Smith and wife, Roxie Smith, against the plaintiff in error, Tennessee Chemical Company, for the purpose of recovering compensation for the accidental death of their son, Robert, Jr., while in its employ.

Their petition was filed in the circuit court of Davidson county, and alleged that the deceased met his death by accidental injury which arose out of and in the course of his employment by the company, and alleged that they were partially dependent upon deceased for their support prior to and at the time of his death.

The circuit judge found these issues in favor of said petitioners, and the company has appealed to this court, and has assigned thirteen errors.

No question is made as to the amount adjudged as compensation provided the company is liable for any sum.

It will be unnecessary to take up each assignment of error, since they may be grouped under three or four heads, and we will dispose of the questions raised by said assignments of error. The first question raised is that the death of Robert Smith, Jr., was not caused by accident arising out of and in the course of his employment by the company. This involves a brief statement of the facts.

The Tennessee Chemical Company is a corporation with its plant located near Nashville. At the time of Smith's death, and for some years prior thereto, it was engaged in the manufacture of fertilizer. At the time deceased was killed he was employed by said company, and had been for about six years.

In the manufacture of fertilizer the company used water to cool its sulphuric acid chambers, and in the course of the process it became hot. This water so heated is piped from the plant to a reservoir into which it sprays. Said reservoir is sixty feet in diameter, twelve to fourteen feet in depth, and is located on the premises of the company at a distance of about one hundred and fifty feet from its office building. The top of said reservoir rises from twelve to fourteen inches above the level of the surrounding surface. However, about the top or coping of the reservoir dirt has been thrown or filled in so that the surface immediately surrounding the reservoir slopes abruptly to the top coping, and, circling the inside of this pool and flush with its top is a 4-inch pipe, from which, at regular intervals, smaller goose neck pipes project towards the center to the reservoir. From these smaller goose neck pipes the water heated in the process of cooling the acid chambers in the company's plant spray into the reservoir. The reservoir is filled with water to the brim at all times. This reservoir is situated in plain view of the office of the company.

The fertilizer is manufactured by the company from animal carcasses, bone meal, street sweepings, and other constituents, and the handling of the finished products results in considerable soiling, and makes bathing in hot water desirable, if not necessary. The company furnishes

lockers for its employees, and upon coming to the plant they go to their lockers and exchange their street clothes for their work clothes, and when the day's work is over, after proper bathing, they change their work clothes for their street clothes. The company furnishes hot water for the white employees, but the custom was for the colored employees to take their buckets and go to said reservoir and obtain water for bathing purposes. This custom was well known to the company, and was acquiesced in by it without protest.

On the evening of September 22, 1919, at the close of the day's work, Robert Smith, Jr., went to his locker, obtained his bucket, and started to said reservoir to get hot water with which to bathe. That was the last time he was ever seen alive. His companion, who had a locker next to his, Eugene West, was with him when he started to the reservoir, but thought nothing of his failure to return promptly, as deceased frequently cleaned the laboratory of the company after regular hours. The next morning the body of deceased, with his working clothes on, together with said bucket and a small piece of pipe, was found in the bottom of said reservoir; and, without detailing the evidence, we are satisfied from the evidence that the deceased accidentally fell into said reservoir and was drowned. While there is some evidence to the effect that his neck was broken, from which it is argued that he was killed or assaulted by some other party or employee, this insistence is not supported by the weight of the evidence; and, in any event, there is ample evidence to support the finding of the circuit judge that his death was caused by accident arising out of and in the course of his employment. That his death was so caused may

be shown by circumstantial evidence just as any other fact is proven. Corpus Juris, Treatise on Workmen's Compensation Acts, p. 127; *Flucker* v. *Carnegie Steel Co.,* 263 Pa., 113, 106 Atl., 192; *Donlon* v. *Kips Bay Brewing & Malting Co.,* 189 App. Div., 415, 179 N. Y. Supp., 93; *Hollenbach Co.* v. *Hollenbach,* 181 Ky., 262, 204 S. W., 152, 13 A. L. R., 524; *Manziano* v. *Public Service Gas Co.,* 92 N. J. Law, 322, 105 Atl., 484; *Steel Sales Corporation* v. *Industrial Commission of Illinois et al.,* 293 Ill., 435, 127 N. E., 698, 14 A. L. R., 274.

It is none the less an injury by accident arising out of and in the course of employment, though it occurred to the employee while not actually engaged in the work of the master.

In *Johnson Coffee Co.* v. *McDonald,* 143 Tenn., 505, 226 S. W., 215, this court said:

"As to the first point, the cases arising under workmen's compensation laws are practically unanimous in holding that injuries received by employees while in the act of leaving, or preparing to leave, the place of employment to get lunch or refreshment, or while eating lunches on the premises, as allowed by the employer, arise out of and in the course of employment."

In the case of *Terlecki* v. *Strauss,* 85 N. J. Law, 454, 89 Atl., 1023, the court held that where a factory employee quit work at her machine shortly before noon, and was, in accordance with custom, combing particles of wool out of her hair preparatory to going home at a point away from her machine, when her hair was caught in other machinery and she was injured, she was entitled to compensation, the court through Judge Swayze saying:

"We have no doubt that the accident happened in the course of employment. It would be entirely too narrow a construction to limit the benefit of the statute to the time the workman is actually employed at his machine. He must have time to reach his machine and to get away from his employer's premises. In fact, it is a necessary implication of the contract of employment that the workman shall come to his work and shall leave with reasonable speed when the work is over. The preparation reasonably necessary for beginning work after the employer's premises are reached and for leaving when the work is over is a part of the employment. A workman is none the less in the course of employment because he is engaged in changing his street clothes for his working clothes, or in changing his working clothes for his street clothes. In the present case it is reasonably necessary that the petitioner should comb her hair and remove the particles of wool before leaving the factory."

In *Steel Sales Corporation* v. *Industrial Commission of Illinois,* supra, the court said:

"An employee while at work for his employer may do those things which are necessary to his own health and comfort, even though they are personal to himself, and such acts will be considered incidental to his employment."

In *Whiting-Mead Commercial Co.* v. *Industrial Accident Commission of California,* 178 Cal., 505, 173 Pac., 1105, 5 A. L. R., 1518, the court held that an accident incident to the attempt by one employed in the business of wrecking houses to light a cigarette in working hours arises out of his employment within the operation of the Workmen's Compensation Act (St. Cal., 1917, p. 831)

as to entitle him to compensation for injury to his hand
through ignition of a bandage saturated with turpentine
to alleviate the pain of a nail wound in his hand.   The
court said:

"Such acts as are necessary to the life, comfort, and
convenience of the servant while at work, though strictly
personal to himself, and not acts of service, are inciden-
tal to the service, and injury sustained in the performance
thereof is deemed to have arisen out of the employment.
A man must breathe and occasionally drink water while
at work.   In these and other conceivable instances he
ministers unto himself, but in a remote sense these acts
contribute to the furtherance of his work.  .  .  .   That
such acts will be done in the course of employment is
necessarily contemplated, and they are inevitable inci-
dents.   Such dangers as attend them, therefore, are in-
cident dangers.   At the same time injuries occasioned
by them are accidents resulting from the employment."

*In re Ayers,* 66 Ind. App., 458, 118 N. E., 386, the court
said: ."A workman who receives an injury while at a
place on, or reasonably near, the premises where he is
to work, or at a place to which his employment requires
him to go while doing something incident to or connected
with his employment, or which is reasonably necessary
for, and preparatory to, the beginning of his work, or
while doing something reasonably connected with his em-
ployment, or incident thereto, after his actual labors in his
employment are completed for the day, or for any par-
ticular period, may be allowed compensation for such in-
jury"—citing numerous cases.

And, again, the court in the same case said further:
"Where an employee is injured while on duty, or while

doing something incident to his employment, and reasonably necessary to his personal health or comfort, though not strictly necessary to his employment, such injury will ordinarily be held to arise out of the employment"—citing authorities.

And in *Hollenbach Co.* v. *Hollenbach*, supra, it was stated: "Undoubtedly one who is washing, dressing, and preparing himself on the master's premises at the close of the day's work, to leave the premises is, in the mea of the act, in the course of his employment, bec these things are reasonably incident to the day's w

In the case of *Milne* v. *Sanders*, 143 Tenn., 602, W., 702, this court said:

"It is well settled in cases of this character that the c cuit judge will not be reversed if there is any evidence to support his finding."

Applying this rule to the case under consideration, we find ample evidence to support the finding of the circuit judge, and the assignments of error relating to the question which we have been discussing will be overruled.

The next contention, and the one upon which counsel for the company chiefly rely, is that the father and mother of deceased are not dependents within the meaning of our statute.

Many authorities have been cited by counsel for the respective parties upon this question, but the provision of our statute is so very clear and plain that it speaks for itself, and makes a citation of authority from other jurisdictions unnecessary.

Subsections 3 and 3a of section 30 of chapter 123 of the Acts of 1919 are as follows:

"(3) Wife, child, husband, mother, father, grand-mother, grandfather, sister, brother, mother-in-law, and father-in-law who were wholly supported by the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his actual dependents, and payment of compensation shall be made to them in the order named.

"(3a) Any member of a class named in subdivision (3) who regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his partial dependent, and payment of compensation shall be made to such dependents in the order named."

The first inquiry is, Did the father and mother derive a part of their support from the deceased; and, second, were such contributions by the deceased regularly made?

The question of dependency is one of fact. In the Corpus Juris Treatise of the Workmen's Compensation Acts, p. 59, the annotator, in discussing the question of dependence, states:

"And except as to those persons who stand in such relation to the employee as, under the terms of the statutes, to be conclusively presumed to be dependent on him, the question of dependency is one of fact."

Many authorities are cited in support of this text.

The circuit judge having held that the original petitioners were partial dependents, his judgment will not be disturbed if there is any evidence to support it.

The evidence shows that the deceased was nineteen years of age at the time of his death; that he had been in the employ of the company for about six years; that at

the time of his death and for some months prior thereto he had received regular wages of $3.50 per day; that he frequently did extra work, and that his weekly wage ranged from $20 to $24 per week. The evidence further shows that upon receipt of his weekly wage he always turned same over to his mother, and that she would occasionally give him $5 for spending money, and about twice a year, when he wanted to purchase clothes, she would return to him $2 additional. The evidence also shows that the father of deceased, who is an old man, received about $80 per month as an employee of the company, and that he turned over most, if not all, of his wage or wages to his wife, and that out of the sums so received from her husband and son she paid the expenses of the household, including taxes and insurance, paid the grocery bills, and "put a little by for the medicine and doctor," but she testified that, living as they did, they consumed practically all of said income, and that she was unable to save any money. It will thus be seen that their income will be largely reduced, and it is to meet a case of this character that provision is expressly made by the statute.

We are of the opinion, therefore, that the petitioners are partial dependents within the meaning of our statute, and the assignments of error raising this question will be overruled.

Error is also assigned upon the action of the trial court in awarding compensation for a period that would have extended beyond the minority of the deceased.

We find no provision in the statute limiting such compensation to the minority of the deceased, and it is not our province nor right to read such provision into the

statute.   In other jurisdictions compensation has been awarded where the deceased was of age at the time of his death.   We have not had an opportunity to read the statutes upon which said decisions were based.   Some of the cases so holding are: *Parson* v. *Murphy et al.,* 101 Neb., 542, 163 N. W., 847, L. R. A., 1918F, 479; *Belcher* v. Campo, 1 Conn. Com. Dec. Dig., 612; *In re McMahon,* 229 Mass., 48, 118 N. E., 189.

This assignment of error will therefore be overruled.

The remaining assignment of error relates to the action of the trial court in excluding certain testimony of a witness by the name of Nappier.

In this the trial court was not in error, and this assignment of error will be disallowed.

Upon the whole, we find no error in the judgment of the circuit court, and it will be affirmed, with costs.