R. W. HARTWELL MOTOR CO., INC., AND THE EMPLOYERS' LIABILITY ASSURANCE CORP., LTD., *v.* MRS. H. O. HICKERSON.

(*Nashville,* December Term, 1929.)

Opinion filed April 5, 1930.

516

J. E. Travis and E. J. Walsh, for plaintiff in error.

Keefe & Denney, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

H. O. Hickerson, an automobile mechanic, while working for the Hartwell Motor Company, died very suddenly, and this proceeding was instituted by his widow to recover compensation for herself and her two infant children. Payment is resisted upon the grounds that death did not result from accidental injury and failure to give the statutory thirty days' written notice.

The trial court found that death was the result of accident, and that, in the circumstances, petitioner was excusable for failing to give written notice.

The Hartwell Motor Company is sales agent for the Chrysler automobile in Nashville, and operates a repair shop as a part of its business, which is conducted at 1515 Broad Street.

Before ten o'clock on the morning of March 14, 1929, deceased was engaged in honing the cylinders of an automobile motor block and was using a portable electric drill for this purpose. The hood, the head of the motor and the radiator had been removed, and the front end of

the automobile was being supported by two steel jacks placed under the front axle, which caused it to be grounded. The deceased was standing up on the automobile over the motor, facing the windshield, operating the electric drill which propelled the hone in the cylinder walls.

Boyd, another mechanic, was from twelve to fifteen feet away under a different car, where he remained about five minutes. He heard deceased operating the drill; then heard the drill stop. When he came from under the car he was working on he saw deceased lying backward his head about six inches off the floor, and he would have fallen to the floor but for the fact one of the stud bolts in the motor had caught in his trousers pocket. The hone and electric drill were still standing in one of the cylinders of the automobile. Boyd testified that deceased drew one breath after he reached him.

Mr. Hartwell, manager of the company, had an ambulance called and sent deceased to the hospital. He also called the company physician and sent him to the hospital to attend deceased, but the latter was dead when the physician reached the hospital. The physician only made a superficial examination of the deceased and declined to sign a death certificate stating cause of death.

Shortly after the deceased was sent to the hospital the company had the drill tested, and the evidence shows that it was in good working condition.

The theory of petitioner is that deceased was either electrocuted or that his foot slipped and he received a fatal injury in falling.

The theory of the company is that Hickerson died from some natural cause, but offered no proof to that effect. It contends that there is no evidence that death resulted

from accidental injury. It concedes that such injury may be established by circumstantial evidence, but insists that the circumstances proven are not sufficient to justify an inference of accidental injury causing death.

According to the testimony offered by the petitioner the primary line of 2300 volts of the Nashville Railway and Light Company and the secondary line of 110 volts, which fed the Hartwell Motor Company shop, are both on the same poles and pass through a tree a short distance west of the shop and are from four to eighteen inches apart; that the secondary wires sag considerably; the insulation of both sets of wires is bad, and where the wires pass through the trees they are uninsulated; that it had rained on the preceding day and up to one A. M. on the morning of March 14th; there were leaves on this tree; both water and moist wood are good conductors; if the 2300 volt line came in contact with the 110 volt line by means of wet leaves, twigs, limbs or branches, excess voltage would pass through the 110 volts line; a person can be killed by a current of less than 220 volts, increased voltage would go through a man's body if he was grounded as deceased was; the situation is a very dangerous one; the Board of Underwriters require on a current of 550 volts a gap of six inches unless line is in conduit; blowing or burning out of fuses depends upon excess amperage, voltage having nothing to do with it; an excess number of volts flowing through the 110 volt feed wire into the shop would not blow or burn out fuses; that the electric drill used by deceased was an old type and unsafe; excess voltage coming over the feed line into this drill would have no effect upon the mechanism of the drill; the Board of Underwriters have required safety devices on all electric tools since January 1, 1929, to pre-

vent accidents to the operators; this particular drill shocked deceased the night before he was killed, and had previously shocked other employes, knocking one off the car; after these previous shocks this drill had been sent to an electrician for inspection, and nothing could be found wrong with its mechanism; that deceased was about twenty-five years of age, strong, healthy and robust, a perfect specimen of manhood, appeared to be perfectly sound and never complained of any illness or disease; deceased had a burn over his left eye; the blood of deceased was dark and coagulated quickly, being hard to drain from the blood vessels, which is characteristic of persons who have been electrocuted.

The physician of the company had an opportunity to examine deceased for the purpose of ascertaining the cause of death but did not do so.

The company had a right to demand an autopsy which it did not see proper to exercise.

From these facts we think the trial court could have reasonably inferred that deceased was accidentally killed. The universal rule seems to be that if the conclusions of the arbiter are such as may be reasonably inferred from the proven facts, the award, upon appeal, will not be disturbed.

"The finding of the board or commission is on a footing with the verdict of a jury. It is only when the evidentiary facts are undisputed and no conflicting inference respecting the ultimate fact can be drawn therefrom that the question becomes one of law. 28 Ruling Case Law, 829.

"It is true that where only one inference can be reasonably drawn from undisputed facts a question of law arises, as in *Radtke Bros. & K. Co.* v. *Rutzinski,* 174 Wis.

212, 183 N. W. 168; but where from undisputed facts different reasonable inferences can be drawn, a finding by the commission has all the conclusive effect of a finding on conflicting evidence." *Lewis* v. *Industrial Commission* (Wis.), 25 A. L. R., 139.

"If the findings are supported by inferences which may fairly be drawn from the evidence, even though the evidence be susceptible of opposing inferences, the reviewing court will not disturb the award." *Hartford Acc. & I. Co.* v. *Industrial Acci. Com.* (Cal.), 58 A. L. R., 1392.

■ The principle is the same as that involved in negligence cases in which this court has announced repeatedly that even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under the circumstances conceded, the defendant was negligent, the matter should be left to the jury. *Roofing & Mfg. Co.* v. *Black,* 129 Tenn., 36.

■ The rule of reasonable inference, where the evidence was circumstantial, has been recognized by this court in numerous compensation cases, some of the later ones being the following: *Tenn. Chem. Co.* v. *Smith,* 145 Tenn., 532; *Tennessee Eastman Corp.* v. *Russell,* 150 Tenn., 331; *King* v. *Buckeye Cotton Oil Co.,* 155 Tenn., 491; *Shockley* v. *Produce & Ice Co.,* 158 Tenn., 148; *Hartford Acc. & Indem. Co.* v. *Hay,* 159 Tenn., 202.

In *Hills* v. *Blair,* 182 Mich., 20, the employee of the railroad left the tool house to go home for his dinner. The station was 1934 feet west of the tool house and his home was 225 feet beyond. As he left he was cautioned that a freight train was approaching from the east and answered that he would be all right. There was a cinder path beside the track. A short time after this train had passed the body of this employee was found lying beside

the track 950 feet west of the tool house and near a stub switch, a lantern prong of which was bent to the west. There were no eyewitnesses to the accident. It was the theory of claimant that deceased was accidentally struck by the train as he was traveling along the track toward his home and thrown against the switch standard which stood about twenty feet east of where his body was discovered. Respondents contended that shortly after leaving the tool house deceased boarded the train, which was moving slowest at that point, intending to ride as far as the depot and drop off, but that as the train increased its speed on approaching the depot, after ascertaining that there was no signal set for a stop, he either jumped or fell, striking the switch standard, and was thereby killed.

The board found for the claimant.

The Supreme Court, in disposing of the respective theories, said:

"It is contended by appellants that the facts proven here do not in reason support the inference of the board as to the manner in which deceased met his death, but, on the contrary, conclusively show that he was killed in an attempt to board or leave a moving train, precluding any award under the ruling in *Pope* v. *Hill's Phymouth Co.*, 5 B. W. C., 175, in which case a workman in a colliery going home to his dinner on the premises of his employer was killed in attempting to jump on a passing tramcar. It is further urged as a defense that, if it cannot be said as a matter of law a finding of fact should have been made as appellants contend, it should at least be held that the proven facts are equally consistent with either one of the two alternatives, and no inferences can legitimately be drawn to support an award.

"We are not prepared to hold that the findings of fact, as to the manner of the accident, are entirely without evidential support, either direct or by inference. They are therefore to be taken as conclusive under the statute."

In *B., D. & C. R. R. Co.* v. *Industrial Board,* 276 Ill., 454, the material facts are that Yanda and Albeitz were carpenters working on top of a car about nine feet wide and thirty-one feet long. There were running-boards laid lengthwise on top of the car, about six inches apart, and the roof of the car on each side was oval, making what was called a "turtle-back" car. There were a number of hatchways for ventilation placed in pairs on each side of the running-boards, about twelve inches wide, sixteen inches long and sixteen or eighteen inches deep. At the bottom of each ventilator there was an iron frame forming a "ground," and near Yanda was an exposed end of an uninsulated cable charged with approximately 550 volts of electricity, and the ventilator beside him was open. Albeitz looked up and saw Yanda suddenly rise up in a half-standing position, with both feet on top of the car and fall over lengthwise of the car dead. Albeitz did not see Yanda step into or otherwise come in contact with the iron in the ventilator or with the exposed end of the cable, but when he saw him he was half-standing and was keeling over. Yanda was forty-seven years of age, in perfect health and had not been sick in twenty-one years. Yanda's daughter testified that his hands were burned. There was much testimony to the contrary.

The board found for the claimant.

The Supreme Court, in responding to the contention that there was no evidence of accidental death, said:

"The burden of proof that Yanda's death was an accident arising out of his employment rested upon the ad-

ministratrix, and such proof must amount to something more than mere guess and conjecture. That being so, it is contended that there was an entire failure to prove the cause of his death, and that the decision of the board rested on nothing but the possibility of a contact with the iron plate and the exposed end of the cable, and even that possibility was negatived by the testimony of Albeitz. The evidence was that Yanda was, and for twenty-one years had been, in perfect physical condition; and the reasonable presumption is that he was killed by some external, efficient agency. The agency was present if it became operative through contact with the iron plate and exposed end of the cable. If the testimony of the daughter was true, it is certain that he did come into contact with the deadly agency, and we have no authority to consider the weight of the evidence where there was credible testimony before the board. The fact that other persons testified differently does not authorize interference with the decision of the board. Neither does the fact that Albeitz, who was looking down and working with his cap over his eyes, did not see Yanda make the contact. Albeitz saw him half standing, when he keeled over, gave two or three gasps and was dead, and the rational explanation is that the death was caused by an electric shock.''

We find numerous cases where death resulted from contact with wires supposed to carry 110 or 120 volts of electricity. In several of these cases the doctrine of *res ipsa loquitur* was applied.

With respect to notice, our statute provides for written notice to the employer of an injury, and that no compensation shall be payable unless written notice is given the employer within thirty days after the accident ''unless reasonable excuse for failure to give such notice is made

to the satisfaction of the tribunal to which the claim for compensation may be presented.''

The act unmistakably aims at a prompt adjustment of claims by a procedure as simple and direct as possible. The first step is by agreement. If unable to agree, the act provides that the claimant shall file a petition ''setting out the facts on which the claim is based.'' The defendant is to set up his defense by answer.

Section 47 provides as follows:

''That the rule of common law requiring strict construction of statutes in derogation of common law shall not be applicable to the provisions of this Act, but the same is hereby declared to be a remedial Act which shall be given an equitable construction by the courts to the end that the objects and purposes of this Act may be realized and attained.''

In *Mangrum* v. *Aetna Life Ins. Co.*, 153 Tenn., 212, the court said:

''The Workmen's Compensation Act as a whole contemplates a simple and inexpensive plan by which the parties, independent of counsel can agree upon a settlement conformable to the provisions of the act; and, to effectuate this object, it is provided that such agreement shall have the approval of the court.''

The general purpose and procedure contemplated by this modern legislation is thus stated in 28 Ruling Case Law, 824, to-wit:

''The Workman's Compensation Act has a procedure all its own. It is a practice act, in effect. By virtue of its provisions a relation arises between the employee and the employer, under which in the event of a personal injury to the employee there shall be speedy ascertainment of the new kind of compensation created by the act,

coupled with a voluntary relinquishment by both parties of the right to trial by jury as to matters covered by the act. For the accomplishment of these ends a simple method is furnished operating without delay or unnecessary formality. The practice should be direct and flexible in order to adapt the remedy to the needs of the particular case. In some respects a proceeding under the statute resembles an action at law; the ultimate object is the enforcement of a money demand, and it is within the meaning of the term 'action,' in the comprehensive sense of the pursuit of a remedy before a tribunal of justice. Broadly speaking, the procedure resembles that of a suit in equity. The power of the industrial board or commission is judicial in nature, and its members in the discharge of their duties are to be governed by the same general principles as those governing judicial officers generally. The technicalities of the common law are abolished, whether in respect of the forms of pleading, the rules respecting parties, or the rules of evidence."

The policy of the courts in construing these statutes seems to be to get away from technical pleading, simplify the procedure as much as possible, and limit the pleadings and proof to the issues as to which the parties are unable to agree.

The provisions of our act as to pleading and procedure are quite meager, and the court, in formulating the proper practice, should give effect to the purpose and object to be attained.

We are unable to find any cases from other jurisdictions where the question of pleading is discussed further than expressions to the effect that they are informal, non-technical, simple and not governed by the rules of the common law.

■ We hold that a claimant does not have to affirmatively allege notice, or an excuse for not giving it, in his petition.

There is a general rule of pleading that where conditions precedent to the right of action exist, their performance must be alleged by plaintiff in order to state a cause of action, or where there has been no performance and plaintiff intends to rely upon matter excusing performance, such matter must be alleged, 31 Cyc., 107.

■ There is no provision in our act making notice a condition precedent to bringing suit, and such a requirement would accomplish no useful purpose. As a rule notice is given, and to require in every case the formality of alleging notice, or an excuse for not giving it, and then compel petitioner to support these allegations with proof, when no such issue is involved, would tend to lengthen pleadings and proof rather than shorten them.

The provision for notice is a salutary and useful one that the courts willingly enforce when the rights of the employer are jeopardized or prejudiced. But it should not be used as a means of defeating justice. To avoid this situation, a very broad discretion was vested in the trial court to decide, before awarding compensation, whether a satisfactory excuse has been offered for failing to give notice. This point was emphasized in *Washington County* v. *Evans*, 156 Tenn., 201.

The requirement as to notice is placed upon the right to receive compensation and not upon the right to bring suit. There is nothing in the act which forbids an employee from suing the next day after he is injured and subsequently giving notice. But, before a recovery is had, he must prove notice or give a satisfactory excuse for failing to give it.

■ This provision of the act was enacted for the benefit of the employer, and under all the authorities can be. waived, just as like provisions in a policy of insurance can be waived, and are usually treated as waived when not plead in defense. 26 Corpus Juris, 502.

■ The proper practice is for the employer to plead want of notice in his answer, as was done in this case. The burden is then on the claimant to prove that notice was given, or to satisfy the court that he is excusable for not giving it. By this practice the issue is clearly made and it works no injustice to either party. This seems to have been assumed by this court as the proper practice in *Patten Hotel Co.* v. *Milner,* 145 Tenn., 639, and *Williams* v. *Buchanan,* 149 Tenn., 645.

The trial court held that the petitioner was excusable for not giving written notice, and in so holding there was no abuse of discretion.

■ The petitioner, Mrs. Hickerson, had no personal knowledge as to the injury, while the company had actual knowledge both as to the injury, its nature and all of the facts and circumstances connected therewith. In addition to the facts hereinabove detailed, one of the officers of the company testified that he was not present at the shop when the drill was tested, for the reason that he had gone to the home of the deceased. It thus appears that the company knew where the deceased resided.

The act provides that the written notice shall state "the name and address of the employee, the time, place and nature and cause of the accident resulting in injury or death."

The company was in possession of all of this information.

The giving of notice is excused when it would avail nothing and serve no useful purpose. 46 Corpus Juris, 552.

In *Crane Enamelware Co.* v. *Dotson,* 152 Tenn., 408, we referred to the fact that the underlying conception of the compensation act was that of insurance of a contractual nature, and then said:

"In *Ligon's Administrators* v. *Insurance Co.,* 87 Tenn., 344, 10 S. W., 769, in considering the usual provision in fire policies requiring written proof of loss within a stated period, as a condition precedent to the bringing of suit, this court said:

" 'Such stipulations are eminently proper, and should be sustained, and are by the courts upheld; but, being a provision for the benefit of the insurance company, can be waived by the latter, and will be held by the courts as waived where the conduct of the company has misled, and was such as might well have misled a reasonably prudent man, or where it is manifest that the company had already been put in possession of all the information that said clause was intended to furnish, and made no request for more specific details until after the lapse of an unreasonable time, leaving the insured to suppose that no further demands would be made.' "

In *Beech* v. *Keicher,* 154 Tenn., 329, it was held that an employee could not be excused from giving written notice merely because his employer knew that he was injured; but where, as in this case, the employer not only knew of the injury but had knowledge as to its nature and the attending facts and circumstances, a case is presented for the exercise of discretion by the trial court

as to the sufficiency of the excuse, such as was exercised in *Ezell* v. *Tipton,* 150 Tenn., 300; *Crane Enamelware Co.* v. *Dotson,* 152 Tenn., 401; *Ware* v. *Ill. Cent. Ry. Co.,* 153 Tenn., 144; and *Washington County* v. *Evans,* 156 Tenn., 201. Notice in some cases may be very material, but to have given it in this case, where the employer possessed the information which the notice is intended to convey, would have been an idle ceremony. In such circumstances the court is more lenient in excusing notice, particularly where the employer makes no effort to show that he was prejudiced because it was not given.

It is easy to conceive how an employer could be prejudiced and placed at a disadvantage where notice is withheld under such circumstances as appear in *Patten Hotel Co.* v. *Milner,* 145 Tenn., 632; *Beech* v. *Keicher,* 154 Tenn., 329; and *Brookside Mills et al.* v. *Harrison,* 158 Tenn., 86, in which cases the suits were dismissed for failure to give notice. The facts in these cases are in no sense similar to those in the case under consideration.

Finding no reversible error in the judgment of the trial court, an affirmance may be entered.