KINGSPORT SILK MILLS *v.* VIRGIE COX.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

DODSON & FERGUSON and KELLY & PENN, for plaintiff in error.

WORLEY, McAMIS & HAWK, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The facts, as found by the trial court, are as follows:

"The Court finds that the petitioner, Virgie Cox, was an employe of the defendant, Kingsport Silk Mills, at the time of the alleged accident on October 21, 1929. That she fell just after the noon hour on the floor in the main building while watching a basket ball game by other employes on the court—being played by permission of and encouraged by the defendant as a means of recreation for the employes during such noon hour of thirty-five minutes —that this fall was accidental, either while standing on or walking across the floor which according to the uncontradicted record was slippery on account of its smooth surface. Such accident grew out of and in the course of her employment—that by reason of the injury in the breaking of her left thigh joint near the hip, she was permanently and totally incapacitated from working at any occupation which would bring her an income. The Court further finds that the manager of the defendant mills had immediate knowledge of the accident—that she was sent to the hospital by defendant and her bills paid —that representatives of the Company visited her while in the hospital and papers tendered her for signature

with reference to her injuries and accident, all within thirty days, and that by reason of these and other acts of defendant it waived the thirty days' written notice required by the Compensation Act.

"Petitioner is awarded fifty per centum of her average weekly wage of $15.96, at the time of the accident, or $7.98 for 400 weeks, beginning at and after the date of the accident, on October 21, 1929, and $5 per week for the remaining 150 weeks, or so long as such permanent disability lasts, as provided by law in such cases."

██ The court was correct in holding that the injury arose out of and in the course of the employment. *Johnson Coffee Co.* v. *McDonald*, 143 Tenn., 510; *Tennessee Chemical Co.* v. *Smith*, 145 Tenn., 532; *Patten Hotel Co.* v. *Milner*, 145 Tenn., 632; *Shockley* v. *Produce Ice Co.*, 158 Tenn., 148; Boyd, Workmen's Comp., sec. 481; 1 Honnold, Workmen's Comp., sec. 111; Bradbury, Workmen's Comp. (3 Ed.), 524.

The underlying principle is thus stated by Mr. Bradbury:

"The relation of master and servant, in so far as it involves the obligation of master to protect the servant, is not suspended during the noon hour, where the master expressly, or by fair implication, invites his servants to remain on the premises in the immediate vicinity of the work."

A leading case, and one in which the authorities are reviewed at length, is *Thomas* v. *Proctor & Gamble Mfg. Co.* (Kan.), 6 A. L. R., 1145; also annotation following the opinion. In that case it was held that a seventeen-year-old girl, who was paid by the hour, was injured during a half-hour intermission at noon, while, although at liberty to leave the premises, she remained there and, after eating her lunch, engaged with fellow employes, in

accordance with a custom known to and approved by her employer, in riding on a truck, her injury being caused by falling from the truck while it was being drawn by a fellow employe, was entitled to recover compensation. In that case, as in this, it was shown that the employes were not under the control of the employer during the noon recess. In that case it was seriously urged by the employer that employes had been expressly forbidden to ride on that truck. In this case the employes were not forbidden to play basket ball but were encouraged to do so. It appears, however, that petitioner was not playing basket ball and had not done so, but fell while walking on the floor.

Where, at such time, an employe is injured while engaged in some forbidden act, or while in a place where she has no right to be, the rule would be different.

■ With respect to the failure to give the thirty days' written notice, it appears that the employer and the agent of the company insuring the employer had actual notice of all the facts, and it is not claimed that the failure to give the written notice was prejudicial to the employer. In these circumstances the discretion exercised by the trial court, with respect to notice, will not be disturbed. *Hartwell Motor Co., Inc.*, v. *Hickerson*, 160 Tenn., 529.

■ There is evidence in the record of total permanent disability.

Dr. Hauk testified as follows:

"Q. What is the condition of her leg with reference to the leaders and muscles wasting away? A. The leg just dangles this way. She has a nonunion up here and the leg is drawn somewhat and there is some atrophy of the muscles, as I recall.

"Q. Has she any use of that leg at all? A. None whatever.

"Q. I will ask you whether or not in your opinion it would be safe to amputate that limb? A. I don't think so.

"Q. Is there any chance, in your opinion, to better the condition of that limb by an operation of any kind? A. If she was a normal girl, there probably would be, but the condition she is in, I don't think it would. I don't think it would justify it.

"Q. I will ask you whether or not in the condition you found her in, and see her today, if she is in any condition to do any kind of work or labor, such as working at the silk mill or anything like that? A. I think she is totally disabled.

"Q. What would you say with reference to whether or not, in your opinion, that will be permanent? A. I think it is permanent."

Dr. McNeer testified that petitioner was unable to do any kind of work and was practically bedfast.

The evidence shows that the only injury the petitioner received was to her left hip and that no other part of her body received any physical injury. The physician testified that the X-rays show that she received a fracture of the neck of the femur or left leg.

■ Counsel for the employer insist that the compensation should be limited to that provided for the loss of a leg, viz., fifty per centum of the average weekly wages during one hundred and seventy-five weeks.

We agree with the chancellor, however, who held that since the petitioner was permanently and totally disabled her case was governed by subsection (e) of section 28 of the act, which provides:

"The total and permanent loss of the sight of both eyes, or the loss of both arms at the shoulder, or com-

plete and permanent paralysis, or total and permanent loss of mental faculties, or any other injury which totally incapacitates the employe from working at an occupation which brings him an income, shall constitute total disability."

Ordinarily the loss of a leg does not result in permanent total disability, but occasionally it does, just as it did in this case; and in these exceptional cases it is just and proper that the employe receive the same compensation as one who is permanently and totally disabled in some other way. This construction harmonizes the two provisions and accords with what we interpret the legislative intent to be.

■ It is finally insisted that an operation would greatly reduce petitioner's disability. The physicians differ about this, and, furthermore, no legal demand for an operation was made by the employer.

We find no error in the decree of the chancellor, and it will be affirmed.