Larry WELLINGTON,
Plaintiff-Appellant,

v.

JOHN MORRELL & COMPANY and Liberty Mutual Insurance Company,
Defendants-Appellees.

Supreme Court of Tennessee,
at Jackson.

July 27, 1981.

---

6. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

B. J. Wade, Memphis, for plaintiff-appellant.

Jack A. Childers, Jr., Memphis, for defendants-appellees.

## OPINION

BROCK, Justice.

This is an action to recover benefits under the Worker's Compensation Act. The trial court found that the accident did not arise out of and in the course of plaintiff's employment and, for that reason, dismissed the complaint.

The plaintiff, Wellington, was employed by the defendant John Morrell Meat Packing Company as a butcher. His usual work day began at 5:30 a. m. and the regular lunch "break" was from 10:30 a. m. until 11:00 a. m. Mr. Littlejohn, the employer's personnel supervisor, explained that employees did not have "set hours." The time card punched by the plaintiff on the day of his accident, January 16, 1979, showed that he clocked in at 10:04 a. m. and clocked out at 3:18 p. m. (It was explained that an hour on the time clock was broken into 100 parts rather than the customary 60 minutes.)

The defendant's packing plant is surrounded by a fence and a guard is posted at the entrance to permit entry only to authorized persons. As noted the plaintiff arrived late for work on January 16, 1979, during the time set aside for the normal lunch break. Upon arrival, the plaintiff walked past the guard at the entrance, picked up his uniform and hard hat from the personnel office and after putting his work clothes on, went to the lunch room and "got something to eat." He then left with his lunch en route to the locker room where he intended to eat it, as was his custom.

The lunch room and the locker room were separated by a third room used as a personnel office. There were three exits available to the plaintiff for leaving the lunch room and outside the one chosen by him was a step down to a dirt or gravel path which led to the locker room. Immediately below this step on the day of the accident was a puddle of water in which a brick or rock had been placed for travelers to step onto to avoid the water. As the plaintiff came out this exit and down the steps to the path, he placed his foot on the brick or rock and it slipped causing him to twist his knee sustaining the injury of which he complains.

Later a torn cartilage was surgically removed from that knee and it is for this injury and these disabilities that he seeks worker's compensation in this case. The plaintiff's injury was not immediately painful and, so, he went ahead and ate his lunch in the locker room and then performed his duties until 3:18 p. m. at which time he quit for the day. He also worked on the next day following the accident but on the second day following the accident he was unable to work because of swelling and pain in the injured knee. Plaintiff did not work from January 17, 1979, until May 7, 1979, following surgery on his knee.

The defendant's lunch room, as well as its entire plant premises, was closed to the public. Employees were not required to eat lunch on the premises and often left the premises during the lunch hour. Because of health regulations, they were not permitted to eat lunch in the portion of the plaintiff's plant where meat was present. It was quite common for employees to eat their lunches in the lunch room provided by the employer and it was established by the testimony that the employer was aware that employees used the exit/entrance from the lunch room and the path from the lunch room to the locker room, as was done by the plaintiff on the occasion of his accident, and that the employer did not prohibit such use. Mr. Littlejohn, the employer's personnel supervisor testified:

"Q. Are you aware that there is—used to be, at least—a brick or a stone in that area where employees would step and water collects?

"A. Yes.

\*      \*      \*      \*      \*      \*

"Q. Are you aware that employees frequently leave this lunch room and travel the course that Mr. Wellington did on January 16?

"A. I have observed them leaving from that area.

"Q. Okay. The company doesn't prohibit them from doing that do they?

"A. No."

However, the employer did not require employees to use any particular one of the three exits from the lunch room.

Upon the foregoing facts, the trial judge held that the injury and accident to the plaintiff did not arise out of and in the course of his employment. He declined to further elaborate his reasons other than to say:

"The Court: The court, in short, is of the opinion that the three prong test required in the case has not been met. The court accordingly finds in favor of the defendant.

"You will prepare an order to that effect incorporating the court's ruling.

"Mr. Wade: Your Honor, for the record, is the court adopting the standard that we are not required to—that we have not shown that we were on a required route or is the court saying—

"The Court: The court is simply indicating that there are three necessary requirements, and that they have not been met.

"Mr. Wade: I understand that, Your Honor, but for the record, I would like for the court to indicate which requirements the court feels that we have not met, so that I can address those issues on appeal.

"The Court: As I understand these cases, the cases require concurrence of all three. It is not a matter of one or two, but each one of the three must be met.

"Mr. Wade: All right. Thank you, Your Honor.

"Mr. Childress: Thank you, Your Honor."

Counsel for both of the opposing parties are of the opinion, as indicated by their briefs, and by their oral argument, that the trial judge was referring to the analysis employed by this Court in *Woods v. Warren*, Tenn., 548 S.W.2d 651 (1977). In *Woods v. Warren, supra*, this Court denied compensation to an employee who slipped and fell on snow and ice on a public sidewalk, located on the premises of the employer, before she arrived at her office located inside an adjoining building.

In our opinion, the facts of this case substantially distinguish it from the situation presented in *Woods v. Warren*. Here, the employee had arrived on the premises from which all unauthorized persons are excluded by a fence and a guard had donned his work clothes and was carrying his lunch from a lunch room furnished by the employer to a locker room provided by the employer for its employees which was often used by the plaintiff and others for the eating of their lunches. These particular facts, in our view, are more analogous to the facts present in *Hankins v. Camel Manufacturing Company*, Tenn., 492 S.W.2d 212 (1973); *Kingsport Silk Mills v. Cox*, 161 Tenn. 470, 33 S.W.2d 90 (1930) and *Johnson*

*Coffee Co. v. McDonald*, 143 Tenn. 505, 226 S.W. 215 (1920). In our opinion the decision in *Woods v. Warren, supra*, which we reaffirm, does not control the proper disposition of this case.

In the *Hankins* case the employee was injured on the premises of her employer during the lunch break while en route to obtain her lunch from a "lunch wagon" owned and operated by a third person but temporarily located in a public alley which separated two of the buildings used by the employer in its business. The employee slipped and fell causing her injury as she was leaving an exit from the building in which she worked and entering upon the alley where the lunch wagon was located. It was held that her accident arose out of and in the course of her employment. In the *McDonald* case the employee had left the employer's building on her lunch hour and crossed the street where she procured her lunch and upon return was going to the third floor of the building where she worked to eat her lunch when the elevator that she was using to go to the third floor failed to stop and she became excited and, in attempting to get off, fell down the elevator shaft causing her death. It appeared that the employer allowed the employees to eat their lunch on the lunch hour on the premises and it was held that her death arose out of and in the course of her employment. In the course of its opinion the Court stated:

> "As to the first point, the cases arising under workmen's compensation laws are practically unanimous in holding that injuries received by employees while in the act of leaving, or preparing to leave, the place of employment to get lunch or refreshment, or while eating lunches on the premises, as allowed by the employer, arise out of and in the course of employment." 226 S.W. at 216.

In the *Kingsport Silk Mills* case the employee fell just after the lunch recess, in the main building, while watching a basketball game played by other employees on the court, the game by the employees being with the permission of the employer and encouraged by it as a means of recreation for the employees during the noon break of 35 minutes. In holding that the employee's injury arose out of and in the course of his employment the Court quoted with approval from Bradberry, Workmen's Compensation (3rd ed.) 524:

> " 'The relation of master and servant, in so far as it involves the obligation of master to protect the servant, is not suspended during the noon hour, where the master expressly, or by fair implication, invites his servants to remain on the premises in the immediate vicinity of the work.' " 33 S.W.2d at 91.

The holding of compensability in these three cases decided by this Court is consistent with the decisions of other courts throughout the nation. 82 Am. Jur.2d *Workmen's Compensation* § 272 (1976).

As we noted recently in *Bell v. Kelso Oil Co.*, Tenn., 597 S.W.2d 731, 734 (1980):

> "It is difficult, perhaps impossible, to compose a formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment to those which do not; hence, in determining whether an accident arose out of and in the course of the employment, each case must be decided with respect to its own attendant circumstances and not by resort to some formula."

We conclude that the trial court erred in holding that the accident and injury in the instant case did not arise out of and in the course of the employment of the employee. We, therefore, reverse the judgment of the trial court and remand this cause to that court for a new trial. Costs of appeal are taxed against the appellees.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.