Buford T. **HOLDER**, Plaintiff-Appellee,

v.

**WILSON SPORTING GOODS COMPA- NY and National Union Fire Insurance Company of Pittsburg**, Defendants-Ap- pellants.

No. 86–37–I.

Supreme Court of Tennessee, at Nashville.

Jan. 5, 1987.

Donald J. Ray, Timothy R. Brock, Tulla- homa, for defendants-appellants.

Rick L. Moore, Tullahoma, for plaintiff- appellee.

OPINION

DROWOTA, Justice.

This Worker's Compensation appeal presents two issues on which the law has been long and well-settled; these issues are: (1) whether an injury to an employee during a lunch break on the employer's premises arose out of and in the course of employment, and (2) whether material evi- dence supports the trial court's determina- tion of the extent of disability. The trial court found that the injury in this case was compensable and awarded Plaintiff, Buford T. Holder, benefits for 50% permanent par- tial disability to the body as a whole. The employer, Wilson Sporting Goods Compa- ny, and its insurance carrier (Defendants) have appealed. Plaintiff has moved for sanctions against Defendants for a friv- olous appeal.

Plaintiff was 51 years old at the time of trial in January, 1986; he had worked for Defendant at various jobs within the plant for 33 years until September, 1985. In addition to the injury out of which this action arose, he suffers from hypertension, is blind in one eye and deaf in one ear. In November, 1983, he suffered a mild stroke. On the day of the accident, January 10, 1984, Plaintiff had arrived at work, parked in the main employee parking lot, and

clocked in for work at just before 7:00 A.M. His usual practice was to bring his lunch to work and to eat at work; he stored the container at his work station until lunch. Defendant provided a lunch period of 35 minutes from 11:55 A.M. to 12:30 P.M. Although employees were invited to stay on the premises for lunch, they were not required to do so; however, if they left the building, the employees were required to clock out. As a routine practice, when Plaintiff finished eating his lunch, he would take the container out to his car in the employer's parking lot, clocking out before he left the building. On January 10, following his routine, Plaintiff ate, clocked out at a little before 12:00 noon, and left the building to take his lunch container to his car. Snow had been falling that day for well over an hour and covered the parking lot. Plaintiff was aware of the weather conditions when he left the building. On his way to his car, some ten feet from the door of the building, he slipped and fell, severely injuring his right shoulder. Fellow employees assisted Plaintiff in getting up; he continued to his car but shortly returned to the building. An accident report was duly made and eventually he was taken to the company doctor for treatment of his injury. From the beginning, the Defendants have treated the Plaintiff's injury as compensable under the Worker's Compensation Act (the Act) and did not determine to dispute coverage until sometime later. Plaintiff received temporary total disability benefits and his medical expenses were paid by Defendants from the Worker's Compensation policy.

After initial treatment by the company doctor, Plaintiff was subsequently referred through other doctors to Dr. John C. McInnis, an orthopedic surgeon, who undertook the Plaintiff's treatment and recommended surgery to improve the mobility of his shoulder and to alleviate the pain. Despite surgery, the injury has left Plaintiff unable to lift much over five pounds above his waist to his shoulder and he cannot raise his arm over his shoulder or head at all. Having reached maximum medical recovery in late July, 1984, he was subsequently released for work and from Dr. McInnis' care on August 28, 1984; thereafter, he returned to work for Defendant in his previous position. He continued to work for some time but was later terminated after he became involved in a labor dispute in September, 1985. This action was commenced on February 14, 1985, and tried on January 24, 1986.

At trial, Plaintiff testified to the circumstances of his accident and described the extent of the impairment caused by the injury. Among other consequences, Plaintiff has had to learn to use his left hand for many daily tasks because the injury to the right shoulder has inhibited his natural reliance on his right side. He testified that after his return to work in late August, 1984, he was able to perform his job satisfactorily, except on those rare occasions when lifting above his waist was necessary. Since his termination in September, 1985, however, Plaintiff has been unsuccessful in his attempts to obtain employment.

By deposition, Dr. McInnis testified that he first saw Plaintiff by referral on March 26, 1984. Plaintiff was initially admitted to Baptist Hospital in Nashville from April 9 to 13, 1984, for tests and therapy. Dr. McInnis suggested that Plaintiff undergo surgery to attempt to repair the extensive damage to his shoulder and to relieve Plaintiff of persistent pain. On May 21, 1984, Plaintiff was again hospitalized and surgery was performed on May 23, 1984. Follow-up treatment and physical therapy improved his condition, but the permanent effects of his injury have remained substantially uncorrected. Dr. McInnis gave Plaintiff an anatomical disability rating of 7.5% to the body as a whole as a result of this accident. He last saw Plaintiff on May 8, 1985, in anticipation of his deposition and found that his condition was unchanged; he was of the opinion that Plaintiff had recovered as fully as could be expected.

Also testifying was Joe McBee, formerly a manager at the Vocational Training Center at Shelbyville for 15 years; he had routinely evaluated vocational disability in the course of his employment with the

State Division of Vocational Rehabilitation. Mr. McBee evaluated Plaintiff to determine his vocational disability. He gave Plaintiff a battery of four tests in July, 1985. Considering Plaintiff's health, disabilities, his age, the fact that he had worked at only one job during his life, the educational level at which he tested, and his lack of transferrable skills, Mr. McBee concluded that, aside from the job with Defendant, Plaintiff would have a very limited ability to compete in the open labor market. His two most significant obstacles were his shoulder disability and his lack of transferrable skills.

Defendant's personnel manager, Mary Jo Cartwright, also testified. She confirmed that his accident had been treated as a worker's compensation claim. She testified that the parking lot in which Plaintiff fell is for employees only, although other parking space was available to them as well, but that employees are not required to park on the premises. She stated that employees are free to leave the building during lunch as long as they clock out. She took Plaintiff to the company doctor on the day of the accident.

The trial court found that Plaintiff had suffered a compensable injury and assessed a 50% permanent partial disability to the body as a whole; the trial court then commuted the award to a lump sum. At trial, having reversed their position, Defendants contended that this injury did not arise out of or in the course of Plaintiff's employment and was thus not compensable. This contention is continued on appeal; Defendants also challenge the trial court's determination of the extent of disability in this appeal.

■ The Defendants rely on a line of cases controlling coverage of injuries to employees while coming to or leaving work to argue that Plaintiff does not come within the exceptions to the general rule that an employee is not compensable for injuries in transit to or from work. *See Woods v. Warren,* 548 S.W.2d 651 (Tenn.1977) (cases discussed therein.). Noting that Plaintiff was on his own mission of convenience when the accident occurred and that Plaintiff was aware of the hazardous conditions of the parking lot, Defendants contend that Plaintiff did not suffer an injury arising out of and in the course of his employment within the meaning of the Act.

The short and settled answer to this issue is that the Court has consistently distinguished between cases involving injuries while coming to and going from work (en route cases) and those involving injuries to employees on the employer's premises during lunch (on premises lunch break cases). *Compare Lovell v. Metropolitan Government of Nashville and Davidson County,* 696 S.W.2d 2 (Tenn.1985); *Jones v. Ridgewood Health Care Center, Inc.,* 650 S.W.2d 375 (Tenn.1983); *Harper v. Daun-Ray Casuals, Inc.,* 596 S.W.2d 822 (Tenn. 1980); *Quality Care of Nashville v. Waller,* 584 S.W.2d 779 (Tenn.1979); *Kellwood Co. v. Gibson,* 581 S.W.2d 645 (Tenn.1979); *Frazier v. Normak International,* 572 S.W.2d 650 (Tenn.1978); *Aluminum Company of America v. Baker,* 542 S.W.2d 819 (Tenn.1976); *Potts v. Heil-Quaker Corp.,* 482 S.W.2d 135 (Tenn.1972); *Drinnon v. Knox Manufacturing Co.,* 481 S.W.2d 380 (Tenn.1972); *Bennett v. Vanderbilt University,* 198 Tenn. 1, 277 S.W.2d 386 (Tenn. 1955) (en route cases[1]) *with Drew v. Tappan Co.,* 630 S.W.2d 624 (Tenn.1982); *Wellington v. John Morrell & Co.,* 619 S.W.2d 116 (Tenn.1981); *Hankins v. Camel Manufacturing Co.,* 492 S.W.2d 212 (Tenn.1973); *Kingsport Silk Mills v. Cox,* 161 Tenn. 470, 33 S.W.2d 90 (1930); *Johnson Coffee Co. v. McDonald,* 143 Tenn. 505, 226 S.W. 215 (1920) (on premises lunch break cases[2]).

---

**1.** A reading of the en route cases reveals that, although often involving an injury on the employer's premises, the results variously allow or disallow recovery by the injured employee based on the factors contained in *Woods v. Warren, supra.* The result in each case depends on the facts and circumstances involved.

**2.** In contrast to these on premises lunch break cases, *Pacific Employers Insurance Co. v. Booker,* 553 S.W.2d 586 (Tenn.1977), denied recovery for an injury during lunch where the facts showed that the employer required employees to leave the premises during an unpaid lunch period, that the parking lot was open to the

The on premises lunch break cases do not form an exception to the en route cases because the employee is no longer in transit and has "reached his duty station or place of employment," *Woods v. Warren, supra,* at 652–653; thus none of the requirements of the en route cases must be shown in the on premises lunch break cases. "Where the employee is injured on the employer's premises during a break period provided by the employer, such an injury is generally compensable, and the required route-special hazard rules do not apply." *Drew v. Tappan Co., supra,* at 625 (citations omitted).

Defendant invited but did not require its employees to remain on the premises during their lunch period. Allowance of some reasonable period for eating is a part of the routine of employment generally. "In this case, the employee was not en route to [or from] work, but had started work, was on a lunch break, and was injured on the premises. This case falls within the line of cases which could be described as the 'on premises-lunch break cases.'" *Drew v. Tappan Co., supra,* at 625 (citations omitted). That the employee was engaged in permissible, personal activities during the break does not ordinarily remove him from the protection of the Act. *See Wellington v. John Morrell & Co., supra,* at 119; *Hankins v. Camel Manufacturing Co., supra,* at 218. Although some circumstances could remove the employee from coverage, such as engaging in prohibited conduct or being at a place not authorized for employees, such on premises lunch break injuries are generally compensable. *See, e.g., Kingsport Silk Mills v. Cox, supra,* 161 Tenn. at 474, 33 S.W.2d at 91. Moreover, while Defendants argue that Plaintiff was aware of the hazard presented by new fallen snow and that he did not injure himself as a result of a defect in the parking lot, "the law of tort causation, wherein liability is predicated upon fault and nullified by contributory fault, is not applicable in workman's compensation cases." *Bell v. Kelso Oil Co.,*

597 S.W.2d 731, 734 (Tenn.1980). *See also Frazier v. Normak International, supra,* at 652–653. *Cf.* T.C.A. § 50–6–111 (Abrogation of certain common law tort defenses). We can find no controlling distinction between this case and any of the on premises lunch break cases. Defendant's attempts to bring this case within the requirements of *Woods v. Warren, supra,* are blatantly contrary to the long established law governing these circumstances. The remedial policies of the Worker's Compensation Act would be undermined if too severe a line were drawn controlling the compensability of injuries that occur during the normal course of the work day after employees have arrived for work, have started working, and before they have left for the day. The requirements of T.C.A. §§ 50–6–102(a)(4) and 50–6–103 are met on the facts of this case.

■ Defendants also attack the trial court's determination of the extent of Plaintiff's disability. The record on this issue is undisputed and the law is definite. "[T]his Court makes a clear distinction in worker's compensation cases between anatomical impairment as determined by a physician and disability to work which results from such impairment." *Hinson v. Wal-Mart Stores, Inc.,* 654 S.W.2d 675, 677 (Tenn.1983) (citation omitted). *See also, e.g., Federated Mutual Implement & Hardware Insurance Co. v. Cameron,* 220 Tenn. 636, 641, 422 S.W.2d 427, 429 (1967). The extent of disability is a question of fact and the trial court's determination must be supported by material evidence to be sustained on appeal. To determine the extent of unscheduled legal disability, as we have stated in numerous cases, the trial court considers "many pertinent factors, including job skills, education, training, duration of disability, and job opportunities for the disabled, in addition to the anatomical disability testified to by medical experts." *Employers Insurance Co. of Alabama v. Heath,* 536 S.W.2d 341, 343 (Tenn.1976)

public, that the employee was on her way to eat at a place of her choice, and that the factors in

*Woods v. Warren, supra,* were not present.

(citation omitted). Further, this determination is made in reference, not to the job the employee held at the time of the injury, but to the open labor market. *See Prost v. City of Clarksville Police Dept.*, 688 S.W.2d 425, 427 (Tenn.1985) (Although dealing with permanent total disability, the rule is equally applicable to the determination of unscheduled permanent partial disability.). *See also* T.C.A. § 50–6–207(3)(F).[3] The determination of the extent of unscheduled partial disability is measured by loss of earning capacity under this provision of the Act, the same as for permanent total disability.

Defendants contend that there is no material evidence to support the trial court's rating of 50% permanent partial disability to the body as a whole and that the evidence shows that Plaintiff was able to perform his work for Defendant without significant impairment. Defendants also point to the anatomical disability rating of 7.5% attributed to Plaintiff by Dr. McInnis. We note that the evidence of impairment is essentially undisputed on this record and that little material evidence exists to support Defendants' contentions, especially under the law as it presently exists. "We do not find, either in the statute or in the cases, a mandatory requirement that the trial judge fix permanent partial loss of use ... solely with reference to expert testimony." *U.S. Pipe & Foundry Co. v. Caraway*, 546 S.W.2d 215, 217 (Tenn.1977).

Permanency and causation were clearly shown by expert evidence. Dr. McInnis stated that Plaintiff would never regain the full use of his right shoulder and arm and that Plaintiff had recovered as much as he could expect. Although Plaintiff did return to work for Defendant and was able to do most, if not all of his assigned duties, this has more to do with the nature of the job he did for Defendant than with Plaintiff's ability to compete on the open labor market, to which his legal disability is gauged. Accordingly, the evidence showed that Plaintiff is marginally literate, has an eighth grade education, lacks any trans-

ferrable job skills (after working for one employer for 33 years), is over 51 years old, is disabled not only by his right shoulder injury (which prevents him from lifting any significant weight from waist to shoulder or from raising his arm above his shoulder), but also by blindness in one eye and deafness in one ear, and has hypertension as well as a relatively recent history of a mild stroke. We cannot say that the trial court lacked any material evidence upon which to base its assessment of 50% permanent partial disability to the body as a whole. To the contrary, none of these facts was ever disputed and Defendants never attempted to show that Plaintiff had any realistic expectation of employability in the open labor market. Plaintiff's expert, Mr. McBee, an experienced vocational rehabilitation specialist, stated that Plaintiff would have great difficulty in competing in the open labor market in his post-accident condition and in view of his overall health and employment history. Moreover, Plaintiff had not been able to find work at the time of trial.

Plaintiff has urged this Court to award damages for a frivolous appeal under T.C.A. § 27–1–122. Although Worker's Compensation cases are particularly susceptible to frivolous appeals, *Davis v. Gulf Insurance Group*, 546 S.W.2d 583, 586 (Tenn.1977), the Legislature has provided that a party has its appeal as of right to this Court, and we cannot say that this case is so lacking in merit as to be considered a frivolous appeal within the meaning of T.C.A. § 27–1–122. The motion is denied.

We affirm the judgment of the trial court. The costs of this appeal are taxed to Defendants.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.

---

**3.** Scheduled injuries under T.C.A. § 50–6–207(3)(A) are treated differently. *See, e.g.,* *Blackburn v. Allied Chemical Corp.*, 616 S.W.2d 600, 602 (Tenn.1981).