Floyd BAILEY, Plaintiff/Appellee,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant/Appellant.

Supreme Court of Tennessee,
at Jackson.

Feb. 21, 1989.

Charles H. Farmer, Jackson, for defendant/appellant.

David Hardee, Hardee and Martin, P.A., Jackson, for plaintiff/appellee.

## OPINION

O'BRIEN, Justice.

In this case the defendant employer, Madison County Highway Department, through its workers' compensation insurance carrier, has appealed a judgment in the Madison County Chancery Court awarding the plaintiff one hundred percent (100%) permanent total disability compensation at $189 per week for four hundred (400) weeks. Defendant poses two (2) issues for review. In the first it questions the judgment of the trial court in awarding one hundred percent (100%) disability to the body as a whole based upon the contention that plaintiff's injury was only to the right lower extremity. In the second issue it says the trial court erred in commuting plaintiff's weekly award payment to a lump sum.

The injury sustained by plaintiff occurred on 24 September 1986 therefore, the review of findings of fact in the trial court is de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e).

The occurrence of a compensable injury is not disputed. The only proof offered at the hearing of this matter was on behalf of the plaintiff with the exception of a medical deposition of Dr. John Everett who examined plaintiff at defendant's request for the purpose of evaluation. Floyd Bailey was a 57–year–old man who had been employed by the Madison County Highway Department for approximately 41 years. He had no education beyond the second grade in elementary school and could not read or write, beyond signing his name. On the day of his injury he was employed as a bridge foreman which involved bridge and culvert work, and clearing right-of-ways, all of which was fundamentally manual labor involving heavy lifting. He had suffered an on-the-job back injury in 1958 requiring surgery. In 1971 he injured his head, fingers and leg in an automobile accident. He suffered another injury to his leg in 1972. Shortly after that he sustained a shoulder injury. None of these prior injuries created any limitation on his ability to

carry on with his employment. On the day in question he was checking a pipe that was stopped up. He pulled off on the shoulder of the road, parked and walked out behind a truck. As he stepped off the pavement he stepped into a large hole, falling backwards and on his right side. The fall caused him to lose consciousness. When he came to he endeavored to climb out of the hole and passed out again, falling back down once more. When he recovered consciousness the second time he managed to get to his truck and drove to the highway department where he reported the accident. He was sent to Dr. Robert Smith who performed surgery on his knee. He was hospitalized approximately two (2) weeks. He testified that he suffered other injuries to his back, his shoulder and his head but at the time thought these would get better without treatment. Dr. Smith treated him for three or four months and told him his knee was well. Mr. Bailey testified that it was as sore at that time as it ever was. He returned to work at one point for about three weeks and was suspended. At time of trial he had not been able to return to work. It was his statement that he suffered with pain in his leg, back, shoulders and head. He had used a cane or crutches ever since his accident. He could do no kind of manual labor, could drive very little, and was still under the care of Dr. Robert Barnette, one of the deposing physicians, who had put a brace on his leg and administered medication for pain. There was lay testimony from fellow employees that he had been fully capable of doing his job with the highway department prior to his accident. His wife and his sister-in-law testified that prior to the accident he worked seven days a week, did not have any physical problems, and had no complaints. Since the accident he suffered with pain in his knee, back, head and shoulder. He was not able to work, could not sleep at night, could barely get around, and had to sit on the floor to relieve the pain in his back and leg.

Medical testimony was introduced through the depositions of Dr. Robert Barnette and Dr. John Everett. Neither side introduced the testimony of Dr. Robert Smith who performed surgery on Mr. Bailey's leg. Dr. Robert Barnette examined Mr. Bailey in May of 1987. He took a history which included the incident in September 1986 when he stepped in the hole on the shoulder of the road and sustained an injury to his back and right knee. In 1971 he had multiple fractures of the femur and tibula which was treated by Dr. Robert Smith. In 1958 he had back surgery and had considerable withering of the tibialis anticus muscle in the leg as far back as 1960. Mr. Bailey reported severe pain with back and right knee made worse with bending and stooping. He was walking with a cane. X-ray examination of his right leg revealed, "all kind of hardware and wires and screws." X-rays of the back showed evidence of a total laminectomy at the L–5 level from previous surgery. He had loss of normal lumbar lordosis or curve of his back. He had severe hyperostosis, degenerative changes and arthritic changes, with narrowing of the disc spaces throughout the lumbar spine. He had a severe arthritic right knee. He was on a cane, his leg was swollen and his back was in a terrible condition. He could not stand or walk for any period of time. He could not do any lifting, bending, stooping, squatting, climbing, long sitting, had marked instability of the right knee, and severe arthritis of his knee and back. The doctor concluded he could not work and was of the opinion he ought to have a brace on his knee it was so unstable. On the basis of AMA guidelines he concluded that Mr. Bailey suffered a forty or fifty percent (40–50%) permanent disability to the body as a whole. He was of the opinion that there was nothing could be done to rehabilitate him.

Dr. Everett examined Mr. Bailey on 11 June 1987. The history from Mr. Bailey revealed that initially he suffered with his knee after the accident and his shoulder and back problems did not begin until one or two months after the initial injury. Examination revealed some pain in his shoulder with rotation of his arm. Examination of his back disclosed some limited motion of flexion and extension with movement at approximately fifty percent (50%) of nor-

mal. His leg appeared essentially normal with some swelling in the right lower extremity and some mild effluxion in the right knee. He could not attribute plaintiff's back condition to the fall he suffered. He found that Mr. Bailey had a healed fractured knee cap. He could not relate any of Mr. Bailey's other injuries to the accident which occurred in September 1986. He concluded that he sustained a permanent impairment to his right leg based on the fact that he only had ninety (90) degrees of motion in his knee. He assessed his impairment to twenty-one percent (21%) to the right lower extremity based on AMA guidelines. It was his opinion that it would be difficult for him to do any work involving squatting, or climbing with this particular leg, due to the fact that it was not as mobile as it should be.

The trial court made specific findings of fact in which he stated that from his observation of Mr. Bailey in the courtroom he was obviously totally disabled. He considered the anatomical ratings submitted by the two doctors, Mr. Bailey's age, his educational status, and his history of employment with the highway department, as well as the testimony of witnesses in open court, in rendering his judgment.

Clearly, plaintiff's ability to compete for employment in the open labor market is nil under the evidence in this record. It is not disputed that he suffered an on-the-job injury. The defendant has offered little, if any, evidence that plaintiff's condition is not the result of his work related injury.

■ Defendant does not dispute the general rule that an employer is liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case. *Baxter v. Smith*, 211 Tenn. 347, 364 S.W.2d 936, 943, (1962). The theory of disagreement is that Bailey worked for many years with a severe back problem and an injured right knee and did not attempt to seek compensation for his last injury until he was discharged from his employment with the county. We cannot subscribe to that theory. Each of the deposing doctors testified that plaintiff's prior back condition either could have been or had been aggravated by his work accident. Lay testimony confirmed that despite his prior accidents and injuries Mr. Bailey performed his job without any limitations. We cannot say that the evidence in this record preponderates against the findings of the trial court on the extent of plaintiff's disability.

■ The matter of the Court commuting forty-five percent (45%) of plaintiff's compensation to a lump sum payment is another matter. The total permanent disability award of compensation amounted to $75,600. Forty-five percent (45%) of this amount would exceed $34,000. The plaintiff's testimony in regard to his need for a lump sum payment was rather inexact. It included $6,000 in debts which he owed for a new roof on his house and bills which had accrued during his disability. He wanted to pay another $10,740 to put siding and insulation on his house and pay off the mortgage. The maximum was $16,740. There was no proof whatsoever for the need of the sum of $34,020 decreed by the chancellor. The decision to commute an award to a lump sum is a matter of discretion with the trial court. However, this Court has held that lump sum awards are an authorized exception to the general statutory purpose, and are *not* to be awarded as a matter of course. The trial court must consider all relevant facts in light of the purpose of the Tennessee Workers' Compensation Act—the payment of periodic payments as a substitute, and in a manner consistent with, the employee's regular wage. See *Van Hooser v. Mueller Co.*, 741 S.W.2d 329, 330 (Tenn.1987). The chancellor did not ascribe any good reason for the lump sum payment awarded by him and he certainly did not follow the guidelines established by this Court. He did note that plaintiff would be drawing a pension in addition to his workers' compensation. There was no special need established for the lump sum amount allowed by the court. The decree must be modified.

We affirm the judgment of the trial court fixing plaintiff's vocational disability to be one hundred percent (100%) to the body as a whole. We modify the decree to fix the lump sum award to the plaintiff to be $16,821 which equates to eighty-nine (89) weeks at the rate of compensation set out in the trial court judgment. The cause is remanded for the entry of an order in accordance with this judgment. Costs are adjudged against the defendant.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.