Donald Richard CLARK,
Plaintiff–Appellee,

v.

NATIONAL UNION FIRE INSURANCE
CO., Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

June 19, 1989.

Roger L. Ridenour, Clinton, for plaintiff-appellee.

Linda J. Hamilton Mowles, Knoxville, for defendant-appellant.

OPINION

FONES, Justice.

This is a Workers' Compensation case that involves two separate injuries sustained by plaintiff while employed by Manufacturing Sciences Corporation in Oak Ridge, Tennessee. Plaintiff and defendant, National Union Fire Insurance Co., the workers' compensation insurance carrier for Manufacturing Sciences Corp. agreed that each injury arose out of and in the course of employment. The two issues raised on appeal are (1) whether the preponderance of the evidence supports the trial court's award of 25 percent disability to the body as a whole for the May 1986 injury and a 25 percent disability to the body as a whole for the second injury sustained in September 1987; and, (2) whether the trial court erred in allowing plaintiff to receive part of his compensation for his second injury in a lump sum payment.

At time of trial, plaintiff, Donald Richard Clark, was an employee of Manufacturing Sciences Corp. with a wife and two children, ages 9 and 15 months. Manufacturing Sciences is a company that produces depleted uranium sheet products. Plaintiff testified that after he graduated from high school he joined the army, wherein he worked as a radio and switchboard operator. After he left the army, he worked for Southeastern Metals in fabrication, picking up materials, running press brakes, crickets and computer covers. Later, he attended Jacksboro Machinist Vocational School for approximately 15 months. Due to the financial strains of raising a family, plaintiff went to work for Sprague Electric where he tested capacitors for shorts; thus, he was unable to complete his machinist certification. However, plaintiff received a layout's certificate. Approximately two and one-half years later plaintiff went to work for Manufacturing Sciences Corporation. Plaintiff testified that his employment history consisted of jobs that involved mechanical work, bending, lifting heavy objects, and running press brakes.

On 4 May 1986 during the course and scope of his employment plaintiff injured his back when he and another man were picking up a table weighing approximately 230 pounds. Plaintiff visited Dr. Joe Tittle, an orthopedic surgeon, who diagnosed plaintiff as having a herniated nucleus pulposus at the intervertebra disk space between the fourth and fifth lumbar vertebra. Dr. Tittle treated plaintiff conservatively with medication and therapy. Plaintiff was hospitalized in May of 1986 for additional tests, because his pain and numbness persisted and he was getting progressively weaker. The test results were compatible with Dr. Tittle's prior diagnosis and the doctor continued treating plaintiff with therapy and analgesics. Dr. Tittle testified that upon plaintiff's request and strong desire to return to work, he let him return but with a 20 pound lifting restriction. Subsequently, Dr. Tittle removed the restriction and plaintiff was released from his care on 30 July 1986.

Plaintiff testified that after he returned to work from his 4 May injury, he was in great pain and suffered numbness in his right leg; he was a little bit slower and had difficulty in performing his duties. A few months after returning to work plaintiff was promoted to a crew leader in the Fabrication Department, a job requiring less manual labor, but still requiring manual labor.

On 22 September 1987, plaintiff suffered a second injury when he and another man were lifting up the back of a punch machine. Plaintiff returned to Dr. Tittle, who recommended surgery because the MRI showed evidence of lesions existing at L4 and L5. On 5 January 1988 plaintiff underwent surgery on his back. Plaintiff's postoperative recovery was normal, and Dr. Tittle released plaintiff to return to work in February with a 20 pound lifting restriction. Plaintiff returned to his position as crew leader. On 11 May plaintiff was released from all restrictions. He testified that he is able to do the manual labor required of him but only with great difficulty, and that "it makes me pretty sore and my leg goes pretty numb a little bit, you know, it just gets number and number and I get tight, those muscles pretty well draw and I have a lot of leg cramps."

Further, plaintiff testified that he is unable to sit for any length of time, i.e., sitting down to do blueprint work, causes him great pain.

Dr. Tittle testified that each of the injuries was causally related to a work-related incident. It was the opinion of Dr. Tittle that plaintiff was 5 percent permanently partially, physically impaired as a result of the 4 May injury. Dr. Tittle assessed the second injury of 22 September as a 5 percent permanent disability to the body as a whole, and that each injury was a separate one. In his testimony he stated: "Once you have a ruptured disk you are from that point on, ever after, in my mind, a so called back cripple."

At trial, Mr. Gerald Gulley, a vocational placement counselor, testified concerning plaintiff's vocational disability. Mr. Gulley opined that plaintiff would be eliminated from about 55 to 65 percent of the jobs if he were to seek employment in the open market at that time. His opinion was based upon a personal interview with plaintiff, plaintiff's self-defined restrictions, Dr. Tittle's deposition, and plaintiff's employment history. On cross examination, Mr. Gulley stated that the excluded jobs were those that would require plaintiff to lift more than 50 pounds and the sedentary jobs.

In contrast, Dr. Craig Colvin, Ph.D. in rehabilitative counseling, testified that plaintiff did not have any occupational disability; "he would have a zero percent occupational disability." In response to the question why does plaintiff have a zero percent disability, Dr. Colvin answered:

Number one, he is working today as per the request and requirements, again, imposed by his employer, he is doing the work at the standard that they want. The restrictions, there are no restrictions on his work imposed by the treating physician.

On cross examination, Dr. Colvin testified that he had never interviewed plaintiff,

and he was mistaken as to the amount of vocational training plaintiff had received.

Pursuant to T.C.A. § 50–6–225(e) our standard of review in this case is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise.

Addressing the first issue as to whether the evidence preponderates against the trial court's determination of the extent of disability awarded to plaintiff for each of his injuries, defendant argues that plaintiff has failed to prove that he sustained a "loss of earning capacity" due to the work-related injuries.[1]

The threshold question of permanency was established by competent medical evidence, thus the inquiry becomes to what extent did the said injuries impair the employee's earning capacity, that is, the extent of vocational disability. To determine the extent of vocational disability, the trial court considers "many pertinent factors, including job skills, education, training, duration of disability, and job opportunities for the disabled, in addition to the anatomical disability testified to by medical experts." *Employers Ins. Co. of Alabama v. Heath,* 536 S.W.2d 341, 343 (Tenn.1976). The courts must ask whether the employee's earning capacity in relation to the open labor market has been diminished by the residual impairment caused by a work-related injury and not whether he is able to return and perform the job he held at time of injury. *Holder v. Wilson Sporting Goods Co.,* 723 S.W.2d 104, 108 (Tenn. 1987).

The defendant contends that plaintiff suffered no loss of earning capacity, because he was able to return to his job after each injury and do most, if not all of his assigned duties. In *Holder,* we stated that this has more to do with the nature of the job he did for his employer rather than with plaintiff's ability to compete on the

---

**1.** Permanent partial disability for injuries not scheduled were measured by loss of earning capacity prior to the enactment of Chapter 111 Acts of 1953. Since then the statutory criterion has been, "proportionate loss of use of the body as a whole", under which compensation may be awarded in cases where there is no loss of earning capacity.

open labor market, to which his legal disability is gauged. *Id.* at 108.

That an injured worker is re-employed after an injury is a relevant factor to the determination of the extent of vocational disability, regardless of whether the employee returns to the same employment or to some other work. Nevertheless, this factor is not controlling and is only one of many that must be considered. Despite the employee's return to any employment, if the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury, then that is what is meant by vocational disability for the purposes of Workers' Compensation. The assessment of the extent of vocational disability is based on all pertinent factors taken together.

*Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 459 (Tenn.1988).

█ Further, defendant contends that Dr. Tittle's determination of releasing plaintiff from all restrictions and plaintiff's own self-defined restrictions would not be a basis to establish loss of earning capacity. In determining the amount of vocational disability suffered by an injured employee, the trial court considers all the evidence including lay and expert testimony. *Forest Products, Div. of Ludlow Corp. v. Collins*, 534 S.W.2d 306, 309 (Tenn.1976). The claimant's own assessment of his physical condition and resulting disabilities is competent testimony and cannot be disregarded. *See Tom Still Transfer Co. v. Way*, 482 S.W.2d 775, 777 (Tenn.1972). Plaintiff's testimony is probative in establishing such conditions as the existence of pain, its location, and inability to work. *Id.* at 778. As to the concern of defendant that Dr. Tittle did not place any restrictions on plaintiff, Dr. Tittle testified:

I more or less had to do it. He was rather adamant that he be allowed to go back to his job. And I couldn't put a restriction on him against his will.... Once he had it he's going to have it, but, you know, I was—he had been rather—other than being hard-headed about his work, he had been cooperative

in all other ways, and so I felt that he could—he assured me that he could watch out for himself on the job, that he could go back to his regular job and folks would take care of him. So I did not place restrictions on him.

Defendant's reliance on the no restriction placed upon plaintiff by Dr. Tittle and the testimony of Dr. Colvin, who stated that plaintiff had no occupational disability, is misplaced.

█ Clearly, upon review of the record, plaintiff's ability to compete for employment in the open labor market has been diminished, and he has lost earning capacity as a result of his work related injuries. The evidence does not preponderate otherwise. Accordingly, the trial court's award of 25 percent permanent partial disability to the body as a whole for the injury incurred on 4 May 1986 and a 25 percent permanent partial disability to the body as a whole for the work related injury of September 1987 is affirmed.

The second issue is whether the court erred in awarding part of plaintiff's compensation for the second injury in a lump sum payment. An evidentiary hearing was held concerning the commuted lump sum payment, after which the trial judge determined that $10,000 should be in a lump sum payment on the second injury and the remaining balance be paid in periodic payments. Both parties stipulated that plaintiff was entitled to lump sum the compensation award for his first injury.

█ In exercising its discretion to commute workers' compensation award to a lump sum payment pursuant to T.C.A. § 50–6–229, the trial judge should consider the interests of both the employee and the employer, remembering, however, that the workers' compensation laws, in particular this section, were enacted for the benefit of the employee. *See Fowler v. Consolidated Aluminum Corp.*, 665 S.W.2d 713, 715 (Tenn.1984).

Before the trial judge decides to commute an award he ought to be able to ascribe a good reason therefor arising from the evidence produced before him.

**590**

The employee bears the burden of showing that it is in his best interest that the award be commuted rather than paid in installments. The reason most commonly advanced for commuting an award is that the plaintiff has some special need for receiving the money in a lump sum. (citations omitted)

*Id.* at 715.

In the present case the reason advanced by the plaintiff in his request for a lump sum was so that he could buy a home. The plaintiff testified that due to his injuries and having to be off from work, he had fallen "behind about three months with everybody—on the verge of going bankrupt." Plaintiff stated that he could not satisfy his accumulated debts with the first lump sum payment and would like to have the payment for the second injury made in a lump sum so that he could purchase a home.

Under the particular facts and circumstances presented, we have approved a statutory lump sum award for the purpose of purchasing a home. *See Kelley v. 3-M Co.*, 639 S.W.2d 437, 439–40 (Tenn.1982); *Smith v. Gallatin Nursing Home*, 629 S.W.2d 683, 685 (Tenn.1982). We find the trial court's order of a lump sum payment of $10,000 was a proper exercise of its discretion.

At plaintiff's request, the trial court made an award of interest on the judgment of the first injury as provided in T.C.A. § 47–14–122 at the rate of ten percent (10%). T.C.A. § 47–14–121 and 122 provide for post-judgment interest only and it is improper to award interest in the final judgment, to run from some prior date to the date of final judgment, on the authority of those code sections. The trial judge's memorandum opinion was rendered on 25 May 1988 and orders were entered on 30 June and 11 July 1988. However, plaintiff's motion for a lump sum payment had the effect of deferring the final judgments in the trial court on each of his claims until the entry of the 25 July 1988 judgment. The interest awarded by the trial judge is disallowed.

Plaintiff's motion for frivolous appeal damages is denied. The judgment of the trial court, as modified by the denial of interest, is affirmed. Costs adjudged against defendant.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.