**Douglas Wayne DAVENPORT, Plaintiff–Appellee,**

v.

**TAYLOR FEED MILL and Aetna Life Insurance Co., Defendants–Appellants.**

Supreme Court of Tennessee, Middle Section, at Nashville.

Feb. 12, 1990.

Arthur E. McClellan, Gallatin, for defendants-appellants.

Michael D. Galligan, McMinnville, for plaintiff-appellee.

FONES, Justice.

This is a workers' compensation case, and Defendant brings this appeal from the judgment of the Warren County Chancery Court that Plaintiff incurred an occupational disability of sixty percent to the body as a whole. Defendant appeals on three grounds: (1) the trial court erred in permitting a physician to testify as to anatomical impairment when he based his rating on an old edition of an approved treatise; (2) the trial court erred in permitting an expert to testify as to vocational disability when the hypothetical question was based upon facts not in evidence; and (3) the trial court

erred in awarding one lump sum payment. We affirm the judgment of the trial court on all issues except the order that the award be paid in a lump sum.

Douglas Wayne Davenport, the plaintiff, was an employee of the defendant, Taylor Feed Mill, for six and one-half years. Plaintiff's job consisted of grinding mill grains. On 3 October 1987, Plaintiff was injured at work. While stacking 100 pound feed bags, he bent over to pick up a bag and felt a sharp pain in his lower back. Plaintiff informed Defendant of his injury, but continued to work for several days.

On 13 October 1987, Plaintiff consulted Dr. Douglas Haynes, a licensed physician practicing orthopedic medicine. Dr. Haynes concluded that Plaintiff had sustained a ruptured lumbar disc. He determined that Plaintiff had a permanent impairment to the body as a whole. He gave a twelve percent disability rating based on the second edition of the *American Medical Association Guidelines to the Evaluation of Permanent Partial Impairment.*

As to work restrictions, Dr. Haynes testified by deposition, "I told him that I did not feel that he would be able to return to his old job, that being working at a feed mill carrying heavy sacks of feed and fertilizer." He further testified as follows:

Q Have you, along with your assessment of permanent impairment—have you discussed with him any limitations that he might have in any other work he might do?

A Yes. I told him that I felt a fifty (50) pound permanent weight lifting [ban] would be indicated.

Q How about—have you discussed with him his repetitive bending, stooping and lifting?

A Yes. I also told him that I felt it would be unadvisable for him to rely—and I even went further and stated—on manual labor as a source of income for the future, and I encouraged him to seek training for [a] more sedentary type of job.

Dr. Jennings Marshall, associate professor of Economics at Samford University, also testified at trial. Dr. Marshall had

interviewed Plaintiff before trial concerning his work experience, medical restrictions, and educational qualifications. He had also reviewed a psychological evaluation and two medical depositions, including Dr. Haynes'. When Dr. Marshall began to describe Plaintiff's characteristics, but before he gave an opinion, the defense attorney objected to his testimony. The basis of the objection was that Dr. Marshall relied on hearsay to form his opinion and that a hypothetical question was the only proper way for him to testify. Prior to the Chancellor making a specific ruling, Plaintiff's attorney relented and solicited Dr. Marshall's opinion through a hypothetical question. Dr. Marshall was asked to assume many facts, but the only assumption relevant to this appeal concerned work restrictions. He was asked to "assume that the doctor also testified that [Plaintiff] should—that manual labor is excluded for him?" After all the assumptions were made Dr. Marshall concluded, "I think a person with the assumed conditions that you described—their prospects for employment would be greatly diminished and, I think, to the point of sixty-five (65%)." On cross examination Dr. Marshall admitted, "If he can do repeated bending, stooping, lifting, that would increase employment prospects for him." He explained that "it would be a question of whether the fifty (50) pounds—the below fifty (50) pounds could be done repetitively or just on occasion."

At the end of the trial on 16 March 1989, the Chancellor ruled, "All right. I am going to give him a judgment for sixty percent (60%) disability. I think that is about what he has. Court will be adjourned." In his order on 30 March 1989, the Chancellor decreed that the award must be paid in a lump sum.

## I.

■ Dr. Haynes' rating of twelve percent disability was based on the second edition of the *American Medical Association Guidelines to the Evaluation of Permanent Partial Impairment.* At the time of the trial, these guidelines were published in their third edition. Tenn.Code Ann. § 50–6–204(d)(3) states:

> To provide uniformity and fairness for all parties, any medical report prepared by a physician furnishing medical treatment to a claimant shall use the American Medical Association Guides to the Evaluation of Permanent Impairment, (American Medical Associations) or the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment, (American Academy of Orthopedic Surgeons). A physician shall utilize the most recent edition of either publication in determining the degree of anatomical impairment. A practitioner shall be required to give an impairment rating based on one (1) of the two (2) publications noted above.

Defendants' appeal on this issue rests upon the statute above and *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn.1987). In *Humphrey,* a young chiropractor based his testimony on an old edition of an A.M.A. guide. He found that the employee did sustain some permanent partial disability, and he rated it at ten percent. We held that it was error to admit the chiropractor's testimony, and we reversed. This rule of law, however, was subsequently qualified. A rating that conforms to the statutory requirements is unnecessary when causation and permanency are already established. *See Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452, 457 (Tenn.1988) and *Lyle v. Exxon Corp.,* 746 S.W.2d 694, 699 (Tenn.1988). In *Lyle,* we held that "use of one of the two guides named in the statute was unnecessary, although preferable, where causation and permanency have been established by expert testimony, because the issue then becomes the extent of vocational disability, not anatomical disability." 746 S.W.2d at 699. In the present case, Defendants specifically admitted that Plaintiff had a "permanent impairment," and they never questioned the causation element. In fact, the Chancellor found that the central issue for him to decide was the amount of permanent partial disability. Thus, vocational, and not anatomical, disability was the issue

at trial, and the admission of Dr. Haynes' rating was not error.

## II.

■ Through a series of questions Plaintiff's attorney asked Dr. Marshall to assume many facts and characteristics. Defendants challenge only one assumption in their appeal. Defendants argue that the assumption concerning work restrictions was based upon facts not in evidence. Dr. Haynes restricted Plaintiff by telling him it would be "unadvisable for him to rely" on manual labor for employment and that he should seek a "more sedentary type of job." Dr. Marshall was asked to assume that Dr. Haynes "excluded" manual labor for Plaintiff. Defendants urge this Court to find that this was not a proper characterization of Dr. Haynes' restrictions.

■ A hypothetical question must be supported by the evidence presented at trial. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn.1985). In *Cortrim Manufacturing Co. v. Smith*, 570 S.W.2d 854 (Tenn.1978), this Court addressed the problem faced when an attorney's interpretation of the evidence differs from the facts. In *Cortrim Manufacturing*, the plaintiff's work consisted of bending, stooping, stretching, and reaching down to the floor. Plaintiff's attorney, in his hypothetical question, stated that the job consisted of a "tremendous amount" of such bending. We held:

> The words "tremendous amount" may have been an exaggeration to some extent but, in our view, does not necessarily render the question objectionable. Counsel must be given some leeway in his choice of words in framing such questions and the matter is primarily one for the exercise of discretion by the trial judge.

*Id.* at 856. We further held that restating the hypothetical in cross examination is the proper remedy for pointing out deficiencies in the opposing party's question. *Id.* In the case at hand, the Chancellor heard the direct and cross examinations of Dr. Haynes and held for the plaintiff.

On cross examination, Dr. Marshall stated that if Plaintiff could do repeated bending it "would increase employment prospects for him." He went on to say that the percentage of disability would depend on whether the bending could be done repetitively or just on occasion. Plaintiff believes that the words "unadvisable for him to rely" can be interpreted to mean "excluded," while Defendants argue that there was no explicit prohibition. This is a matter of interpretation for the trial court. In his award of sixty percent permanent partial disability, the Chancellor obviously believed Plaintiff's interpretation of Dr. Haynes' testimony, and a preponderance of the evidence is not otherwise. Tenn.Code Ann. § 50–6–225(e) (1988).

## III.

■ A purpose of the Workers' Compensation Act is to provide injured workers with periodic payments which are a substitute for their regular wages. *Van Hooser v. Mueller Co.*, 741 S.W.2d 329, 330 (Tenn. 1987). Thus, the general statutory payment scheme is periodic. An exception to this general scheme is the lump sum award. *See* Tenn.Code Ann. § 50–6–229 and *Smith v. Gallatin Nursing Home*, 629 S.W.2d 683, 684 (Tenn.1982).

■ The employee has the burden of proving that he has special needs or that exceptional circumstances exist warranting an award of a lump sum payment. *See Van Hooser*, 741 S.W.2d at 331 and *Flowers v. South Central Bell Tel. Co.*, 672 S.W.2d 769, 772 (Tenn.1984). Plaintiff did not file a motion requesting a lump sum award, no hearing was held to establish a special need for a lump sum payment, and no evidence was cited in the Chancellor's order recognizing exceptional circumstances warranting such an award.

As a result, we must reverse the Chancellor's award of a lump sum payment. We affirm the award of sixty percent permanent partial disability to the body as a whole. This cause is remanded for the entry and enforcement of a decree requiring Defendants to pay the accrued benefits and to pay the balance in accordance with

the statutory scheme. The costs of this appeal are taxed to the appellants.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.