Gary Lynn HARNESS,
Plaintiff/Appellee,

v.

CNA INSURANCE COMPANY,
Defendant/Appellant.

Supreme Court of Tennessee,
at Knoxville.

Aug. 5, 1991.

Paul D. Hogan, Jr., Knoxville, for defendant/appellant.

Roger L. Ridenour, Clinton, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

In this workers' compensation action, the trial court awarded permanent partial disability benefits based on its finding that the employee had sustained a 25 percent impairment to the body as a whole, and granted a partial commutation of the disability award. CNA Insurance Company ("CNA"), the insurer of the employer, argues only that the medical proof does not support an award of permanent disability benefits, and that a lump sum payment is not in the employee's best interests. We modify the lump sum award and affirm.

## FACTS

Gary Lynn Harness ("Harness") is a 36–year–old father of four children, who has a third-grade education and who can barely read or write. He has held several menial jobs since the age of 16, and at the time of his injury, was employed by Weigel's, Inc. as a laborer at a milk processing plant.

On June 26, 1989, Harness suffered a back injury while stacking 5–gallon milk containers, weighing approximately 46 pounds each. He missed one week's work, but was paid his regular wages during that week.

Harness was treated on the day of his injury by a chiropractor and was later referred by Weigel's to Dr. Robert Jackson, an orthopedic surgeon. Dr. Jackson treated Harness for approximately nine months with physical therapy and anti-inflammatory drugs, for a "chronic strain of the left scapular (shoulder) area." When Harness complained of additional pain in his chest, Dr. Jackson referred him to an internist, Dr. Ronald Pack, in order to rule out any medical problems such as heart or other conditions.

Dr. Pack treated Harness with drug therapy, physical therapy, and with a TENS unit for elimination of muscular pain, and diagnosed Harness's condition as fibromyalgia, resulting from a muscular-skeletal injury.

## MEDICAL PROOF OF PERMANENT DISABILITY

Weigel's asserts that Harness failed to introduce competent medical proof of a permanent disability. Of course, "permanency of a work-related injury must be shown in most cases by expert medical evidence." *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn.1987).

Dr. Jackson, the orthopedic surgeon, assessed a permanent disability of five percent to the upper extremity, or three percent impairment of the body as a whole, based on the Third Edition of the AMA Guidelines. Dr. Jackson placed no restrictions upon Harness's work activities, but testified that Harness might continue to suffer pain and discomfort from hard manual labor.

Dr. Pack, the internist, assessed a permanent impairment rating of five to ten percent to the body as a whole, based upon the AMA Guidelines, Second Edition. Moreover, Dr. Pack stated that Harness's injury could be expected to restrict his ability to perform manual labor and lifting: "Anything that he has to lift from waist-high to

above his shoulders would be severely limited."

CNA insists that because Dr. Pack used an out-of-date version of the AMA Guidelines, Tenn.Code Ann. § 50–6–204(d)(3) requires the disqualification of Dr. Pack's testimony. "In the absence of any competent medical proof of work restrictions," the argument proceeds, "the preponderance of the evidence does not support the 25 percent award." We disagree.

Tennessee Code Annotated, § 50–6–204(d)(3) provides: "A physician shall utilize the most recent edition of [the AMA Guides] in determining the degree of anatomical impairment." It is true that in *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn.1987), we reversed an award of permanent disability benefits and remanded for a new trial, in part because the only expert testimony supporting the award was based upon an outdated AMA Guide:

> The record is silent as to whether there was any difference between that guide and the one referred to in the statute, or as to whether there have been subsequent editions ... to which the chiropractor should have made reference....
>
> Unless [the plaintiff] produces further testimony on the point, the testimony of the chiropractor should be stricken insofar as it bears upon the issue of permanent partial disability.

*Id.* at 317–18.

More recently, however, we have qualified the rule announced in *Humphrey.* In *Davenport v. Taylor Feed Mill,* 784 S.W.2d 923 (Tenn.1990), this Court stated:

> In *Humphrey* a young chiropractor based his testimony on an old edition of an A.M.A. guide.... We held that it was error to admit the chiropractor's testimony, and we reversed. This rule of law, however, was subsequently qualified. A rating that conforms to the statutory requirements is unnecessary when causation and permanency are already established. *See Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452, 457 (Tenn.1988) and *Lyle v. Exxon Corp.,* 746 S.W.2d 694, 699 (Tenn.1988). In *Lyle,*

we held that "use of one of the two guides named in the statute was unnecessary, although preferable, where causation and permanency have been established by expert testimony, because the issue then becomes the extent of vocational disability, not anatomical disability." 746 S.W.2d at 699.

*Id.* at 925.

■ In this case, Dr. Pack's use of an outdated edition of the AMA Guide is not dispositive, since permanency was already established through the testimony of Dr. Jackson. CNA's argument ignores that testimony entirely. Under the rule announced in *Davenport,* Dr. Pack's testimony was competent and admissible as proof of the extent of Harness's *vocational* disability.

■ While CNA does not contest the sufficiency of the non-medical proof, we note that a vocational expert testified that Harness was precluded from "at least 50 percent of the jobs that he could have done prior to the injury." We find that both the expert and non-expert proof preponderate in favor of the trial court's award of benefits based upon a 25 percent permanent vocational disability.

## COMMUTATION OF PERMANENT DISABILITY BENEFITS

At the hearing on Harness's motion for commutation, Harness testified that he was seven months behind in his house payments in the amount of $1,400.00, and that he was behind in his car payments. Neither the total car debt nor the delinquent amount was specified in the record; however, by the process of elimination, it was either the West Side Auto debt totaling $444.45, payable at $100 a month, or the Security Finance debt of $200.00, payable at $40.00 a month. Harness's total debt structure, including the mortgage on his house, amounted to $9,502.95.

The trial court found that a partial commutation of $6,000 of the permanent disability award was in Harness's best interest. CNA argues that because Harness did not lose any pay during his period of tem-

porary total disability, his need for a lump sum payment is not related to his disability, and therefore "periodic payments are in his best interest." There is some evidence that he missed some overtime, but that loss appears to be insubstantial based on the record.

Tennessee Code Annotated, § 50–6–229(a) (1983) provides, in pertinent part:

**Commutation to lump sum payment with consent of court.—** (a) The amounts of compensation payable periodically hereunder may be commuted to one or more lump sum payments. These may be commuted upon motion of any party subject to the approval of the circuit, chancery or criminal court. No agreed stipulation or order or any agreement by the employer and employee or any other party to the proceeding shall be a prerequisite to the court's approval or disapproval of the award being paid in one or more lump sum payments.

As we said in *Burris v. Cross Mountain Coal Co.,* 798 S.W.2d 746 (Tenn.1990), however,

[t]he purpose of workers' compensation is to provide injured workers with periodic payments which are a substitute for regular wages. *Van Hooser v. Mueller Co.,* 741 S.W.2d 329, 330 (Tenn.1987). Lump sum awards are an authorized exception to this purpose and therefore are not to be awarded as a matter of course. *Bailey v. Liberty Mut. Ins. Co.,* 766 S.W.2d 496, 498 (Tenn.1989).

*Id.* at 750.

In attempting to reconcile the statutory purpose of the Workers' Compensation Act and the commutation of benefits statute, we have held that "the employee has the burden of proving that he has special needs or that exceptional circumstances exist warranting an award of a lump sum payment." *Davenport v. Taylor Feed Mill,* 784 S.W.2d 923, 926 (Tenn.1990) (commutation denied where employee failed to file motion, no evidence was presented, and no hearing held); *Van Hooser v. Mueller Co.,* 741 S.W.2d 329, 330 (Tenn.1987) (partial commutation denied where employee "vaguely" testified he owed money to his

parents and the V.A.); *Fowler v. Consolidated Aluminum Corp.,* 665 S.W.2d 713 (Tenn.1984) (mere fact that employee is capable of managing his own income is insufficient reason for granting commutation).

Applying the special needs test, we have also held in the past that the employee's burden may be met by a demonstrated need for housing. *See Burris v. Cross Mountain Coal,* 798 S.W.2d 746 (Tenn. 1990) (commutation approved to purchase house); *Clark v. National Union Fire Ins.,* 774 S.W.2d 586 (Tenn.1989) (partial commutation approved for downpayment on house); *Flowers v. South Central Bell Telephone Co.,* 672 S.W.2d 769, 772 (Tenn. 1984) (commutation approved for purchase of condominium, so disabled employee would not be burdened with yard work and maintenance); *Kelley v. 3–M Co.,* 639 S.W.2d 437 (Tenn.1982) (commutation approved for purchase of mobile home and rehabilitation program to develop new skills); *Smith v. Gallatin Nursing Home,* 629 S.W.2d 683 (Tenn.1982) (commutation approved for purchase of house). *But see Williams v. Delvan Delta, Inc.,* 753 S.W.2d 344 (Tenn.1988) (partial commutation for purpose of reducing mortgage balance on second home denied).

■ A recent amendment to Tenn.Code Ann. § 50–6–229(a) now alters somewhat the factors which Tennessee courts must consider in determining whether to allow commutation of disability benefits. That amendment adds the following language to the end of subsection (a):

In determining whether to commute an award, the trial court shall consider whether the commutation will be in the best interest of the employee and such court shall also consider the ability of the employee to wisely manage and control the commuted award *irrespective of whether there exists special needs.*

1990 Tenn.Pub. Acts 843, § 1 (emphasis added). Despite the fact that a finding of "special need" is no longer necessary, the statute retains the explicit requirement of a finding that "the commutation will be in the best interest of the employee."

Our examination of this case in light of the new statutory standard leads us to conclude that the employee's best interest is served by a reduction in the lump sum commutation from $6,000.00 to $2,500.00, the bulk of which will be applied to delinquent house payments and attorney's fees on the partial lump sum award.

For the reasons stated herein, the judgment of the trial court is affirmed, as modified. Costs are taxed to the defendant/appellant, CNA Insurance Company.

REID, C.J., and DROWOTA, O'BRIEN, and DAUGHTREY, JJ., concur.