IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

EILEEN SMITH,

      Plaintiff,

v.

SHELBY COUNTY GOVERNMENT,

      Defendant.

Shelby Chancery No. 10615-1
C.A. No. 02A01-9701-CH-00024

Hon. Neal Small, Judge

FILED

September 08, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

DAVID A. E. LUMB, Memphis, Attorney for Plaintiff.

CARROLL C. JOHNSON, Memphis, Attorney for Defendant.

*AFFIRMED*

Opinion filed:

_____

TOMLIN, Sr. J.

      Eileen Smith (hereafter "Plaintiff") filed suit against Shelby County Government (hereafter "Defendant") in the Chancery Court of Shelby County seeking to recover benefits for an injury she sustained while employed by the Shelby County Health Care Center, a division of Defendant. Following a bench trial the chancellor found that Plaintiff had sustained an injury that arose out of and in the course of her employment and awarded her 60% disability to her right arm, along with additional compensation for discretionary costs and attorney fees. Defendant has presented two issues on appeal: Whether the trial court erred in 1) finding that Plaintiff sustained a compensable injury that arose in the course of her employment; and 2) in awarding Plaintiff a permanent vocational disability rating of 60% to the right arm. For the reasons hereinafter stated, we find no error and affirm.

      The basic facts are not in dispute. Plaintiff, who had a bachelor's degree in social work and twenty years experience in that field, was an employee of Defendant when she was injured. Plaintiff testified that the injury occurred when she was assisting a resident patient of the center in removing one of several articles of clothing. During the course of this operation the patient moved her body, causing a jerking force on her arm. Plaintiff noticed that her wrist was swelling and reported the injury to her supervisor. Shortly thereafter, Defendant's in-house physician examined Plaintiff's

hand and advised her to report to the emergency room, where x-rays were taken. At that time her hand was placed in a splint, her arm placed in a sling and she was given medication for pain. She was advised not to return to work immediately.

Plaintiff continued to suffer pain and cramping in her wrist. She stated that her position as a social worker required extensive writing. Her inability to continue to write without pain posed a serious impediment to her performing her job effectively. Plaintiff continued to attempt to do her job, including writing left-handed and typing her notes. Both of these were deemed unacceptable by her supervisor. She continued to work until December 1994, at which time she remained absent from work because of her injury until March 1995.

After extensive attempts at rehabilitation, Plaintiff was sent to Dr. E. B. Wilkerson, Jr., an orthopedic surgeon, for examination and treatment. After examining Plaintiff and performing an arthrogram on her wrist, which revealed an extensive tear in the fibrocartilage of Plaintiff's right wrist, Dr. Wilkerson performed surgery in an attempt to repair the damaged fibrocartilage. Following surgery, Dr. Wilkerson testified that the nature of the injury was not consistent with the description of the way that Plaintiff said she was hurt and voiced the opinion that a degenerative condition in the structure of her cartilage was the problem rather than the injury. After performing numerous tests and range of motion studies, Dr. Wilkerson was of the opinion that Plaintiff had reached maximum medical improvement, and gave her a permanent disability rating of 14% to the right arm. At that time he released her from his care.

In March 1996 after releasing Plaintiff from his care, Dr. Wilkerson completed a standardized report entitled "*Tennessee Department of Labor Division of Worker's Compensation Standard Form Medical Report on Injuries.*" In this report he detailed Plaintiff's injuries. The report contained the following question:

> "Considering the nature of Claimant's occupation and medical history along with diagnosis and treatment, does this injury more probably than not arise out of the claimant's employment?"

Dr. Wilkerson answered "yes" to the above question.

After continuing to experience pain in her right wrist Defendant's risk

management department sent Plaintiff to Dr. Neil Aranov, a clinical psychologist, to determine if there were any psychological factors resulting from her work-related injury that were impairing her recovery and return to the workforce. In his deposition Dr. Aranov testified that Plaintiff suffered from a psychological condition referred to as "adjustment disorder with associated anxiety with depression" which was directly caused by Plaintiff's work-related injury. Dr. Aranov's prescribed treatment plan was unsuccessful and after three separate visits with Plaintiff he terminated the treatment. This suit ultimately followed.

While Defendant as a governmental agency is not covered by the Tennessee Workers Compensation Act, it does have a policy where it compensates for on-the-job injuries, using the Tennessee Workers Compensation Act as a guideline. Following a bench trial the court found that Plaintiff was entitled to 60% disability of the right arm, entitling her to receive weekly payments of $257.00 for 120 weeks amounting to $30,814.00, along with discretionary costs of $386.29 and approved attorney fees in the amount of $6,172.80. This appeal followed.

Our scope of review is *de novo* upon the record in the trial court. All findings of fact by the trial court come to this court with a presumption of correctness, and, absent an error of law, unless we find that the evidence preponderates against these findings we must affirm. T.R.A.P. 13(d).

The first issue we address is whether or not the trial court was in error in finding that Plaintiff's injury occurred in the course and scope of her employment. The record does reflect that the deposition testimony of Dr. Wilkerson was to the effect that the pain described by Plaintiff came from an area of her wrist that would not have resulted from an injury like the one that she received and that following the surgery he was of the opinion that the injury resulted from a degenerative "wear and tear."

Notwithstanding this testimony, the record reveals that Dr. Wilkerson signed

3

at least five different reports to Defendant stating that Plaintiff's injuries arose out of her employment. Four of these reports were filed by Dr. Wilkerson after he had performed the surgery on Plaintiff's wrist. We already noted that the final report filed by Dr. Wilkerson affirmed that Plaintiff's injury, more probably than not arose out of her employment.

There is ample lay testimony by Plaintiff from which the trial court could reasonably infer that a tear of the fibrocartilage of her right wrist was a direct result of Plaintiff's employment by Defendant. A trial court may properly predicate a workers' compensation award on medical testimony that a given accident "could be" the cause of an injury, if there is also lay testimony from which it may reasonably be inferred that the incident was the cause of the injury. P & L Construction Co., Inc. v. Lankford, 559 S.W.2d 793 (Tenn. 1978). This issue is without merit.

The second and final issue is whether the trial court erred in awarding Plaintiff a permanent vocational disability rating of 60% to the right arm. In Clark v. National Union Fire Ins., 774 S.W.2d 586, 589 (Tenn. 1989) our supreme court stated that in order to determine the extent of vocational disability the trial court must consider all of the pertinent factors, including job skills, education, training, duration of disability, job opportunities, in addition to the anatomical disability testified to by the medical experts. Clark at 598. Furthermore, in determining the amount of vocational disability incurred by the employee, the trial court should also consider the employee's own assessment of her physical condition and resulting disabilities. Id. The employee's testimony is probative in establishing such conditions as the existence of pain, its location and the employee's inability to work. Id. In addition to the proof heretofore considered, we note that Dr. Aranov testified that although there was no psychiatric disability present in Plaintiff, she was "not malingering" and that she suffered from an adjustment disorder with associated depression and anxiety directly resulting from her work-related injury.

4

Plaintiff testified that she continued to suffer pain and cramping in her right hand following the numerous and repeated attempts to alleviate these problems.  She further testified that her disability resulted in a reduction in her ability to grip objects as well as a general reduction in the dexterity of her right hand.  Her training and employment experience have been limited to the area of social work for the past twenty years.  The evidence also reflects that Plaintiff subsequently found another job as a social worker following six months of unemployment and that her present employment has been affected by her disability to the extent that it requires her to work many hours more per week to perform duties that she normally would complete in a forty hour work week.  In sum, we are of the opinion that the evidence does not preponderate against the findings of the trial court concerning the extent of her permanent disability.  This issue is also without merit.

Accordingly, the judgment of the trial court is affirmed in all respects.  Costs in this cause on appeal are taxed to Defendant, for which execution may issue if necessary.

_____
TOMLIN, SR. J.

_____
CRAWFORD, P. J. W.S.        (CONCURS)

_____
HIGHERS, J.                        (CONCURS)